# Wytheville

J. T. EPPERSON AND J. T. CARTER, ETC. V. W. G. DEJARNETTE.

June 13, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*McKinney & Settle,* for the plaintiffs in error.

*William Leigh, Jr.,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

In July, 1933, J. T. Epperson and J. T. Carter were lumbermen doing business as the Epperson Lumber Company and were owners of a tract of land in Pittsylvania county, known as Broomfield, situated near the Halifax county line. On it was their small sawmill which had been used by them in sawing a body of timber there. On this Broomfield tract was another body of timber which they wished to cut and saw. For reasons satisfactory to themselves they did not desire to do this work but preferred to have it done by another. To this end they entered into a contract with one C. E. Scott, their co-defendant here. Scott contracted to saw this second lot of timber for $2.50 per thousand and was paid at that rate until the code took effect, and from that time was paid $4 per thousand. The lumber company logged the mill and hauled away the sawed lumber. With this Scott had nothing to do. His contract was to do the sawing, and to do all of it. He had no mill of his own when it was made. Afterward it was suggested that he buy the lumber company's mill, then on the Broomfield place, and idle. Those negotiations fell through and the lumber com-

pany offered to lend it to him. He did borrow it and moved it to the timber he wished to saw. For it he paid nothing and nothing was asked. It was a simple loan and the price which he was to be paid for his work was made before anything was said about lending, and was not afterward changed except to conform to the NRA Code. No member of the lumber company visited this mill while it was in use or in any way undertook to control its operation. Scott hired and paid for such labor as was necessary and did those things which any other independent contractor might have been expected to do.

At the noon hour on September 18, 1933, when the mill was not at work, sparks carried by high wind set fire to some pine laps and leaves on the yard. This fire extended to and burnt over timber land belonging to W. G. DeJarnette just across the Halifax line and in that county. DeJarnette then instituted this action by way of motion in which he charged Epperson, Carter and Scott with negligence. In due course it came on to be heard; he recovered a verdict of $1,000 against all of them which was confirmed by the trial court.

Epperson, Carter and Scott all testify that Scott was in complete control of this operation and that no member of the lumber company went near it from the time it began until the fire. The contract is exceedingly simple. Scott was to saw the lumber and for sawing was to be paid a definite sum. It is true that Epperson and Carter are interested witnesses but Scott is not; he is not a party to this appeal and has not complained of the judgment against him. It is prosecuted by Epperson and Carter alone.

The power and duty of this court to set aside a verdict and judgment unsupported by evidence is now too well established to merit discussion.

While the jury is the judge of the weight of testimony and the credibility of witnesses, it cannot arbitrarily disregard the uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with other facts and circumstances appearing in the record,

even though such witnesses are interested in the results of the litigation. *Spratley* v. *Commonwealth,* 154 Va. 854, 152 S. E. 362; *Hawkins* v. *Commonwealth,* 160 Va. 935, 169 S. E. 558.

■ Was Scott an independent contractor? We reach without difficulty the conclusion that he was.

"An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." Jaggard on Torts, section 73, page 228.

"The law defined an independent contractor to be a person who is employed to do a piece of work without restriction as to the means to be employed, and who employs his own labor and undertakes to do the work according to his own ideas, or in accordance with plans furnished by the person for whom the work is done, to whom the owner looks only for results." *Boyd, Higgins & Goforth* v. *Mahone,* 142 Va. 690, 128 S. E. 259, 262.

■■ "An independent contractor may be defined as one who in the course of an independent occupation prosecutes and directs the work himself, using his own methods to accomplish it. Generally, where an independent contractor is employed to perform a work lawful in itself and not intrinsically dangerous, the company, if it is not negligent in selecting the contractor, is not liable for the wrongful acts or negligence of such contractor. It must appear that it either exercised or reserved the right to exercise control over the work and had the power to choose, direct, and discharge the employees of the contractor. In general it may be said that the liability of the company depends upon whether or not it has retained control and direction of the work." *Talley* v. *Drumheller,* 135 Va. 186, 115 S. E. 517, 519.

■ The ordinary test is this: "Who has the power to control and direct the servants in the performance of their work?" *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 29 S. Ct. 252, 254, 53 L. Ed. 480. See also, the late case of *Roy C. Crowder & Bituminous Casualty Corp.* v. *John G. Hay-*

*maker, ante,* page 77, 178 S. E. 803, quite in point and decided by this court March 17, 1935; *Baker* v. *Nussman & Cox,* 152 Va. 293, 147 S. E. 246; *Davis Bakery* v. *Dozier,* 139 Va. 628, 124 S. E. 411; *Clinchfield Coal Corp.* v. *Redd,* 123 Va. 420, 96 S. E. 836.

In addition to matters noted, the only other circumstance relied upon by DeJarnette to show that the lumber company was itself operating the mill is that it was listed as one of its operations. Epperson was told that he had to do this since the company owned the timber. Not everybody is familiar with all the rules promulgated under the NRA Code and few are willing to get into a controversy with the Federal government or to subject themselves to the possibility of some unknown penalty. People generally do what they are told to do under the assumption that they have to do it; they take no chances. It was for these reasons that this mill was so listed.

It is said that even if Scott was an independent contractor the mill owners are still liable for fires caused by its operation, that this liability is non-assignable and cannot be evaded through the device of the employment of an independent contractor. The principle contended for is widely recognized; but, its application to a given state of facts is not always easy. It applies wherever the work is intrinsically hazardous, or in the course of its normal operation, will create a nuisance. The leading case on this subject is *Bower* v. *Peate,* L. R. 1 Q. B. Div. 321. In it Cockburn, C. J., said: " * * * a man who orders a work to be executed, from which, in the natural course of things, injurious consequences to his neighbor must be expected to arise, unless means are adopted by which such consequences may be prevented, is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of his responsibility by employing someone else— whether it be the contractor employed to do the work from which the danger arises, or some independent person—to do what is necessary to prevent the act he has ordered to be done from becoming wrongful."

This principle was applied in *Bowers* v. *Town of Martinsville*, 156 Va. 497, 159 S. E. 196, 202. There it was necessary to dig into the bank of a canal in placing an abutment of a bridge.

"The plans and specifications in accordance with which Bowers contracted to construct these bridges required the making of excavations in the south bank of the canal for the abutments of both bridges, and left to his discretion the method of making them. The making of these excavations would necessarily weaken the canal bank and endanger its breaking under the pressure of the water in the canal, unless proper precautions were taken to prevent it. By reason of these facts, the positive duty rested upon Bowers to take proper precautions to see to it that the bank of the canal should not be damaged by the making of these excavations or in doing the work incident thereto. This duty was a non-delegable duty of which Bowers could not relieve himself by the employment of an independent contractor, and, therefore, though Loving was an independent contractor, Bowers remained liable for any negligence of Loving in failing to use proper care in the construction and maintenance of a coffer-dam to enable him to make the excavation for the abutment of the bridge over the canal and to prevent the breaking of the canal bank while the strength of the same was impaired by the excavations made therein."

The right to recover was denied in *Bibb's Adm'r* v. *N. & W. R. Co.*, 87 Va. 711, 14 S. E. 163. In that case it appears that a contractor named Smith was building a bridge for the railroad. Bibb was his employee. A heavy train approached this bridge under construction and halted. Smith's foreman signalled that it might proceed. It did, the bridge broke and Bibb was killed. The right of recovery as against the railroad was denied. The work was not inherently dangerous and neither it nor the results of its building were nuisances in themselves.

*John L. Roper Lumber Co.* v. *Hewitt* (C. C. A.) 287 Fed. 120, was a case in which an independent contractor operated

a logging railway. It ran on an unballasted track across open ground. Its right of way was uncleared and foul with thick dead grass. It was there held that the hazards of fire were, from such an operation, so manifest as to make not merely the contractor, but the owner also, liable; that it was intrinsically dangerous to operate logging engines over a tinder bed.

The same principle was applied in *Bryant* v. *Sampson Lumber Co.*, 174 N. C. 360, 93 S. E. 926.

In *Lindsay* v. *McCaslin*, 123 Me. 197, 122 Atl. 412, a contractor was employed to burn away huckleberry bushes. The fire escaped control and burned over adjoining land. This burning was said to be inherently a hazardous undertaking and the owner was held liable.

Cases like these are persuasive but not in point. That of *Lovelace* v. *Ivey*, 41 Ga. App. 204, 152 S. E. 266, is. An independent contractor, working for Lovelace, was operating a steam sawmill situated in the woods. A fire due to the negligence of the contractor started from the mill and burned over Ivey's land. The court held that there could be no recovery against the owner, Lovelace, and said: "The operation of a sawmill by a steam engine located in the woods is not a work which is 'wrongful in itself or (which) if done in an ordinary manner would result in a nuisance,' or which, 'according to previous knowledge and experience * * * is in its nature dangerous to others however carefully performed.' Where the sawmill is operated by an independent contractor, and, through negligence of his servants in its operation, fire escapes and destroys timber on adjoining premises, the person employing the contractor to operate the sawmill, and who does not exercise control over the work or interfere in its execution, is not liable to the owner of the timber destroyed as a result of the negligence of the contractor's servants."

In *Harkins* v. *National Handle Co.*, 159 Ark. 15, 250 S. W. 900, 902, it appears the fire from one sawmill burned another near by. The offending mill was under lease; sawdust on its own yard caught afire and this fire reached the

plaintiff's mill. An attempt was made to hold the lessor liable. The court said: "The piling of sawdust is not a nuisance *per se* and unlawful. The doing of a lawful thing which is the natural result of the operation of a business cannot fix liability upon the lessor as an original wrongdoer. It may be that the ignition of the sawdust converted the sawdust pile into a nuisance; but, if so, it does not appear from the evidence that the ignition thereof was a natural and necessary result of the operation of the business. The thing itself must be unlawful and the necessary result of the performance of a lease before a lessor can be held liable to third parties for the negligence of an independent lessee. *Martin* v. *Railway Co.*, 55 Ark. [510] 521, 19 S. W. 314."

■ We think the principle applied in the Georgia case and in this Arkansas case, applies here. The operation of a small steam sawmill such as this is, in common use throughout Virginia, is not so inherently hazardous as to make its owner liable where he has retained no control and has completely surrendered its use to another.

■ Finally it is said that when the fire occurred there was no spark arrester on the smoke stack. We do not know how the mill was equipped when lent and there is nothing to show that it was standard equipment on an engine like this.

Other errors are assigned, but it is not necessary that they be discussed. There can be no recovery on the merits against Epperson and Carter. The judgment against Scott, who has not appealed, of course stands. It was joint and several.

*Reversed.*