## CIRCUIT COURT OF THE CITY OF WINCHESTER

Cecil A. Boyce,
Administrator of
the Estate of
Samuel I. Boyce,
deceased

v.

City of Winchester et al.

Case No. (Law) 95-68

BY JUDGE JOHN E. WETSEL, JR.

July 13, 1995

I have studied your memoranda of authority with respect to the City's demurrer and plea of sovereign immunity and Shawnee's motion for summary judgment. Attached is a statement of what I understand to be undisputed facts. I would ask that you review this statement carefully and advise me within seven days as to whether you are in agreement with respect to these facts.

In your response, I would also like to have the following information.

1. Who directed Boyce to go to Charley Rouss's property and why, and what instructions was he given when he arrived there?

2. Provide copies of the contracts between the City and Shawnee and Charley Rouss. From a technical standpoint, I realize the general contractor and fellow servant issues are before me on demurrer and not summary judgment; nonetheless, if you agree that I can consider the contracts and you answer these following questions and review the statement of facts, I believe I can then rule finally on all the issues which have been presented to me.

## I. *Statement of Material Facts*

The following are facts either established in the pleadings or drawn as inferences in favor of the Plaintiff.

The City of Winchester, Virginia, is a Virginia municipal corporation. The Winchester Fire and Rescue Department is a Department of the City of Winchester.

Shawnee Volunteer Fire Company, Inc., and Charley Rouss Fire Company are units of the Winchester Fire and Rescue Department which is a unit of the City of Winchester Public Safety Program. Both of these fire companies are independent, Virginia non-stock corporations with their principal places of business in Winchester, Virginia. (Motion for Judgment, ¶ 4-5). The City of Winchester has contracts with Shawnee Volunteer Fire Company, Inc., and Charley Rouss Fire Company to provide fire protection service in the city.

The City of Winchester contributes financially to the operating expenses of Shawnee Volunteer Fire Company and Charley Rouss Fire Company.

The City of Winchester also employs firefighters, who are paid as city employees, who work in combination with the volunteer fire companies to provide fire fighting services to its citizens within the City.

The Winchester City Fire Chief is a paid employee of the City of Winchester, and he is the head of the Winchester City Fire and Rescue Department.

On March 15, 1993, Samuel I. Boyce and Raymond Campbell were removing snow from a parking lot owned by the Charley Rouss Fire Company in Winchester. (Motion for Judgment, ¶ 8.) Samuel Boyce was shoveling snow from the rear parking lot, steps, and doorways behind the fire station. Raymond Campbell was operating a front-end loader, owned by the City of Winchester, in the same area when it slipped over a step causing the bucket to strike Samuel Boyce in the chest. (Motion for Judg-

ment, ¶ 9.) Samuel Boyce died as a result of injuries he received in this accident. (Motion for Judgment. ¶ 18.)

The snow removal project in which Boyce was engaged at the time of his death was a project of the Winchester Fire and Rescue Department undertaken pursuant to the general implementation of the city-wide "Snow Plan B," which is an emergency snow removal and snow reaction plan which applies to everyone in the City of Winchester.

At the time of the accident, Samuel Boyce was a volunteer fire fighter with the Shawnee Volunteer Fire Company (Motion for Judgment, ¶ 11), and Raymond Campbell was a volunteer fire fighter with the Charley Rouss Fire Company. (Motion for Judgment, ¶ 12.)

At the time of the Boyce accident, Raymond Campbell was supervising Samuel I. Boyce on an *ad hoc* basis limited to the particular snow removal project in which Boyce and Campbell were involved at the time of the accident. Campbell was not an officer of Charley Rouss Fire Company, a supervisor in the Winchester Fire and Rescue Department, or in Boyce's officially-designated chain of command at the time of the accident.

### August 15, 1995

This case comes before the Court on the City of Winchester's Demurrer and Plea of Sovereign Immunity and on Shawnee Volunteer Fire Department's Motion for Summary Judgment. Upon consideration of the argument of counsel and their briefs, the Court has made the following decision to overrule the City's Demurrer and to grant Shawnee's Motion for Summary Judgment.

### I. *Statement of Material Facts*

The following are facts either established in the pleadings or drawn as inferences in favor of the Plaintiff.

The City of Winchester, Virginia, is a Virginia municipal corporation. The Winchester Fire and Rescue Department is a Department of the City of Winchester.

Shawnee Volunteer Fire Company, Inc., and Charley Rouss Fire Company are units of the Winchester Fire and Rescue Department which is a unit of the City of Winchester Public Safety Program. Both of these fire companies are independent, Virginia nonstock corporations with their principal places of business in Winchester, Virginia. (Motion for Judgment, ¶ 4-5.) The City of Winchester has contracts with Shawnee Volun-

teer Fire Company, Inc., and Charley Rouss Fire Company to provide fire protection service in the City.

On March 15, 1993, Samuel I. Boyce and Raymond Campbell were removing snow from a parking lot owned by the Charley Rouss Fire Company in Winchester. (Motion for Judgment, ¶ 8.) Samuel Boyce was shoveling snow from the rear parking lot, steps, and doorways behind the fire station. Raymond Campbell was operating a front-end loader, owned by the City of Winchester, in the same area when it slipped over a step, causing the bucket to strike Samuel Boyce in the chest. (Motion for Judgment, ¶ 9.) Samuel Boyce died as a result of injuries he received in this accident. (Motion for Judgment, ¶ 18.)

The snow removal project in which Boyce was engaged at the time of his death was a project of the Winchester Fire and Rescue Department.

At the time of the accident, Samuel Boyce was a volunteer fire fighter with the Shawnee Volunteer Fire Company (Motion for Judgment, ¶ 11), and Raymond Campbell was a volunteer fire fighter with the Charley Rouss Fire Company. (Motion for Judgment, ¶ 12.) At the time of the Boyce accident, Raymond Campbell was supervising Samuel I. Boyce.

Plaintiff alleges that Defendants Shawnee Volunteer Company, Inc., Winchester Fire and Rescue Department, and the City of Winchester owed a duty to Samuel I. Boyce to:

(a) Appropriately educate, train, and supervise fire fighter Samuel I. Boyce;

(b) To establish and enforce reasonable safety rules which gave Samuel I. Boyce reasonable protection against injury; and

(c) to furnish a safe place in which to do the work assigned to Samuel I. Boyce, to furnish Samuel I. Boyce suitable materials and machinery, and to guard Samuel I. Boyce against such accidents and casualties as may have been reasonably foreseen.

The Plaintiff alleges that Defendants Shawnee Volunteer Fire Company, Inc., Winchester Fire and Rescue Department, and the City of Winchester, jointly and severally, were negligent in:

(a) Failing to provide the required education, training, and supervision to Samuel I. Boyce, a volunteer fire fighter;

(b) Permitting Samuel I. Boyce to work in front of the tractor in a confined area with no escape route;

(c) Failing to provide Samuel I. Boyce a safe place in which to do the work assigned to him, failing to furnish Samuel I. Boyce suitable materials and machinery, failing to establish and promulgate rules which would

have given Samuel I. Boyce reasonable protection against injury, and failing to guard Samuel I. Boyce against such injuries and casualties that were reasonably foreseen; and,

(d) Failing to establish and enforce reasonable safety rules.

## II. *Conclusions of Law*

In considering a demurrer, the Court must apply "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991), quoting *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988). In all cases except negligence cases, in ruling on a demurrer, "the court is not bound by . . . conclusory [legal] allegations when the issue involves . . . a mixed question of law and fact." *Russo v. White, supra* at 28. There is an exception for negligence cases, because the Rules of Court specifically provide that "an allegation of negligence . . . is sufficient without specifying the particulars of the negligence. On motion made promptly, a bill of particulars may be ordered to amplify any pleading that does not, in the opinion of the Court, comply with this rule." Supreme Court Rule 3:16(b). The Supreme Court recently reviewed the principles governing the trial court's ruling on a demurrer in *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993), in which it stated:

> "A demurrer admits the truth of all material facts properly pleaded. Under this rule, the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988). "On demurrer, a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading." *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156, 156 (1991).
>
> When a motion for judgment or a bill of complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand demurrer. *Hunter v. Burroughs*, 123 Va. 113, 129, 96 S.E. 360, 365 (1918). And, even though a motion for judgment or a bill of complaint may be imperfect, when it is drafted so that defendant cannot mistake the true nature of the

claim, the trial court should overrule the demurrer; if a defendant desires more definite information, or a more specific statement of the grounds of the claim, the defendant should request the court to order the plaintiff to file a bill of particulars. *Alexander v. Kuykendall*, 192 Va. 8, 14-15, 63 S.E.2d 746, 749-50 (1951).

Having examined the motion for judgment and drawing "all reasonable inferences fairly and justly drawn from the facts alleged . . . in aid of the pleadings," it would appear that the motion for judgment has stated a right of action against the City. As reflected in the Court's letter of July 13, 1995, there are factual questions which must be resolved before the Court can rule on the issues raised by the City's demurrer.

Summary Judgment is appropriate if there is no material fact genuinely in dispute. Supreme Court Rule 3:18; *Carson v. LeBlanc*, 245 Va. 135, 139, 427 S.E.2d 189 (1993). In *Metro Machine Corp. v. Mizenko*, 244 Va. 78, 83, 419 S.E.2d 632 (1992) citing *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977), *cert. denied* 436 U.S. 913 (1978), the Supreme Court analyzed the character of the genuine issue of fact criterion governing the Court's disposition of a motion for summary judgment and stated:

> [T]he issue of fact must be "genuine." When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

As the Supreme Court observed in *Virginia and Md. R.R. Co. v. White*, 228 Va. 140, 145, 319 S.E.2d 755 (1984) (quoting *Bly v. Southern Ry. Co.*, 183 Va. 162, 175, 31 S.E.2d 564 (1944)):

> It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. *The very essence of its function is to select from among conflicting inferences* and conclusions that which it considers most reasonable . . . . That conclusion, whether it relates to negligence, causation or any

> other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable. [Emphasis added.]

While the Supreme Court of Virginia frowns on the short-circuiting of litigation where there are genuine issues of fact in dispute or conflicting inferences which may be drawn from uncontested facts, *see Renner v. Stafford*, 245 Va. 351, 429 S.E.2d 351 (1993), and *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993) (ruling on demurrer), there is no genuine issue of fact in dispute or conflicting inferences upon which reasonable men could differ in this case with respect to the right of action asserted against Shawnee.

For the Plaintiff's action to be sustained against Shawnee, a legal duty must exist, and there must be a violation of that duty with resulting damage. *Burdette v. Marks*, 244 Va. 309, 311 (1992); *Marshall v. Winston*, 239 Va. 315, 318 (1990). Generally, a person or entity has no duty to control the conduct of third persons to prevent physical harm to another. *Burdette*, 244 Va. at 311; *Marshall*, 239 Va. at 318; Restatement (Second) of Torts § 315 (1965). The general rule applies unless a special relationship exists (1) between the defendant and the third person that imposes a duty on the defendant to control the third person's conduct, or (2) between the defendant and the plaintiff that gives a right to protection. *Burdette*, 244 Va. at 312; *Marshall*, 239 Va. at 318; Restatement § 315.

Boyce was injured by the action of a third party, Campbell, an agent or employee of Charley Rouss, and the law imposed no duty on Shawnee to control Campbell. Moreover, there is nothing in the relationship between Boyce and Shawnee which created any duties as alleged in the Motion for Judgment with respect to the simple activity of snow removal on the premises of another fire company.

The accident in question occurred on private property owned by Charley Rouss Fire Company. The front end loader which killed Boyce was owned by the City of Winchester and operated by Richard Campbell, a member of Charley Rouss Fire Company. The Shawnee Volunteer Fire Department's only connection with this accident is the fact that Boyce was a member of their fire department. There is no special relationship between Shawnee and Boyce which would give rise to a duty owed to Boyce in this case, the breach of which could potentially impose liability on

Shawnee. Therefore, Shawnee's motion for summary judgment will be granted.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. The City of Winchester's Demurrer is overruled.

2. Shawnee Fire Department's Motion for Summary Judgment is granted, and the motion for judgment is dismissed as to Shawnee Volunteer Fire Department.

### April 18, 1996

This case comes before the Court on the City of Winchester's and Charley Rouss's Motions for Summary Judgment to a wrongful death action arising from the death of a volunteer fireman, who was killed while clearing snow from the parking lot of a volunteer fire department, when he was struck by the bucket of a front end loader operated by another volunteer fireman. Upon consideration of the argument of counsel and their briefs, the Court has made the following decision to grant the City's Motion for Summary Judgment and to deny Rouss's Motion for Summary Judgment.

### I. *Statement of Material Facts*

The following are facts either established in the pleadings or drawn as inferences in favor of the Plaintiff.

The City of Winchester, Virginia, is a Virginia municipal corporation. The Winchester Fire and Rescue Department is a Department of the City of Winchester.

Winchester City Code § 2-7 provides that:

> The city council hereby recognizes the members of the . . . Charley Rouss Fire Company, Inc. . . . Shawnee Volunteer Fire Department, Inc. . . . as an integral part of the official safety program of the city, pursuant to . . . [the] "Line of Duty Act."

The actual firefighting service provided by the various volunteer fire departments in Winchester pursuant to this general resolution has been implemented by a combination of written policies and oral understandings, and there is no written contract between the City and each individual volunteer fire department for the provision of firefighting services.

Shawnee Volunteer Fire Company and Charley Rouss Fire Company are units of the Winchester Fire and Rescue Department for the purpose of

providing firefighting services within the City pursuant to Virginia Code § 27-23.6. Both of these fire companies are independent, Virginia nonstock corporations with their principal places of business in Winchester, Virginia. (Motion for Judgment, ¶ 4-5.)

The City of Winchester contributes financially to the operating expenses of Shawnee Volunteer Fire Company and Charley Rouse Fire Company. The City of Winchester also employs firefighters, who are paid as City employees, who work in combination with the volunteer fire companies to provide fire fighting services to its citizens within the City. However, no paid employees were involved in the incident in question.

The Winchester City Fire Chief is a paid employee of the City of Winchester, and he is the head of the Winchester City Fire and Rescue Department.

On March 15, 1993, Samuel I. Boyce and Raymond Campbell were removing snow from a parking lot owned by the Charley Rouss Fire Company in Winchester. (Motion for Judgment, ¶ 8.) Samuel Boyce was shoveling snow from the rear parking lot, steps, and doorways behind the fire station. Raymond Campbell was operating a tractor-mounted front-end loader in the same area when the loader slipped over a step causing its bucket to strike Samuel Boyce in the chest. (Motion for Judgment, ¶ 9.) Samuel Boyce died as a result of injuries he received in this accident. (Motion for Judgment, ¶ 18.)

On March 15, 1993, Samuel Boyce was a volunteer firefighter with the Shawnee Volunteer Fire Department (Motion for Judgment ¶ 11), and Raymond Campbell was a volunteer firefighter with the Charley Rouss Fire Company. (Motion for Judgment ¶ 12.) The doorway where the accident occurred is behind the Rouss Fire Company building, and it accesses office space which Charley Rouss leases to third parties. (Plaintiff's Response to City's Third Request for Admissions ¶ 2.)

The ownership of the tractor that Campbell was operating is disputed, but it is not claimed that the loader's condition contributed to the accident.

At the time of the Boyce accident, the Plaintiff claims that Raymond Campbell was supervising Samuel I. Boyce on an *ad hoc* basis limited to the particular snow removal project in which Boyce and Campbell were involved at the time of the accident.

While the City of Winchester had actual notice of the accident and of the death of Samuel Boyce, neither the decedent nor his personal representative ever filed with the Winchester City Attorney, the Mayor, or the Chief Executive a written statement stating the nature of the claim asserted

in this lawsuit and the time and place at which the injuries are alleged to have occurred. (Plaintiff's Responses to City of Winchester's Second Request for Admissions, ¶¶ 1, 2, 3, 4, 5; Plaintiff's Responses to City of Winchester's First Request for Admissions, ¶ 1; Exhibits 4, 5.)

Plaintiff alleges that Defendants Charley Rouss Fire Company and the City of Winchester owed a duty to Samuel I. Boyce to:

(a) Appropriately educate, train, and supervise fire fighter Raymond Campbell;

(b) To establish and enforce reasonable safety rules.

Plaintiff alleges that the City of Winchester owed a duty to Samuel I. Boyce to:

(a) Appropriately educate, train, and supervise fire fighter Samuel I. Boyce;

(b) To establish and enforce reasonable safety rules which gave Samuel I. Boyce reasonable protection against injury; and

(c) To furnish a safe place in which to do the work assigned to Samuel I. Boyce, to furnish Samuel I. Boyce suitable materials and machinery, and to guard Samuel I. Boyce against such accidents and casualties as may have been reasonably foreseen.

The Plaintiff alleges that Defendants Charley Rouss Fire Company, Inc., and the City of Winchester, jointly and severally, were negligent in:

(a) Failing to provide the required education, training, and supervision to Raymond Campbell, a volunteer fire fighter;

(b) Acting by or through Raymond Campbell operating the front end loader on the aforesaid steps;

(c) Acting by or through Raymond Campbell using the front end loader on or near the steps with ice and snow under the tractor wheels;

(d) Acting by or through Raymond Campbell negligently operating the tractor causing the tractor to slip over the top step; and

(e) Failing to establish and enforce reasonable safety rules.

The Plaintiff alleges that the City of Winchester was negligent in:

(a) Failing to provide the required education, training, and supervision to Samuel I. Boyce, a volunteer fire fighter;

(b) Permitting Samuel I. Boyce to work in front of the tractor in a confined area with no escape route;

(c) Failing to provide Samuel I. Boyce a safe place in which to do the work assigned to him, failing to furnish Samuel I. Boyce suitable materials and machinery, failing to establish and promulgate rules which would have given Samuel I. Boyce reasonable protection against injury, and fail-

ing to guard Samuel I. Boyce against such injuries and casualties that were reasonably foreseen; and,

(d) Failing to establish and enforce reasonable safety rules.

## II. *Conclusions of Law*

### 1. *Summary Judgment*

Summary Judgment is appropriate if there is no material fact genuinely in dispute. Supreme Court Rule 3:18; *Carson v. LeBlanc*, 245 Va. 135, 139, 427 S.E.2d 189 (1993). In *Metro Machine Corp. v. Mizenko*, 244 Va. 78, 83, 419 S.E.2d 632 (1992) citing *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977), *cert. denied* 436 U.S. 913 (1978), the Supreme Court analyzed the character of the genuine issue of fact criterion governing the Court's disposition of a motion for summary judgment and stated:

> [T]he issue of fact must be "genuine." When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

"Summary judgment shall not be granted if any material fact is genuinely in dispute. Rule 3:18. In considering a motion for summary judgment, a court must adopt those inferences from the facts that are most favorable to the nonmoving party, unless the inferences be strained, forced, or contrary to reason." *Commercial Bus. Sys. v. BellSouth Servs., Inc.*, 249 Va. 39, 41-41, 453 S.E.2d 261 (1995).

As the Supreme Court observed in *Virginia and Md. R.R. Co. v. White*, 228 Va. 140, 145, 319 S.E.2d 755 (1984) (quoting *Bly v. Southern Ry. Co.*, 183 Va. 162, 175, 31 S.E.2d 564 (1944)):

> It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. *The very essence of its function is to select from among conflicting inferences* and conclusions that which it considers most reasonable . . . . That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to

reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable. [Emphasis added.]

While the Supreme Court of Virginia frowns on the short-circuiting of litigation where there are genuine issues of fact in dispute or conflicting inferences which may be drawn from uncontested facts, *see Renner v. Stafford*, 245 Va. 351, 429 S.E.2d 351 (1993), and *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993) (ruling on demurrer), there is no genuine issue of fact in dispute or conflicting inferences upon which reasonable men could differ in this case with respect to the right of action asserted against the City of Winchester.

### 2. *Volunteer Fire Departments Are Limited Agents of the City for the Purpose of Providing Firefighting Services*

By virtue of the adoption of Winchester City Code § 2-7, the general city code ordinances governing fire prevention and protection in the City, Winchester City Code, Chap. 10, Arts. I and II, and the various written policies and oral understandings governing the provision of firefighting services by the volunteer fire departments, the City has implied contracts with each of the volunteer fire departments within the City to provide firefighting services to its citizens. *See National Railroad Passenger Corp. v. Catlett Volunteer Fire Co.*, 241 Va. 402, 407, 404 S.E.2d 216 (1991). For limited purposes volunteer fire companies are deemed to be an instrumentality of municipal governments in Virginia thereby cloaking certain of their firefighting activities with immunity from lawsuits. Va. Code Ann. § 27-23.6(B) provides that:

> any . . . city . . . may provide firefighting . . . services to its citizens by using both government employed and volunteer company or association firefighters and rescuers. If such a system is utilized, the volunteer firefighting and rescue companies and association shall be deemed an instrumentality of the county, city or town, and as such exempt from suit for damages done incident to providing firefighting and rescue services to the county, city or town.

Winchester has employed this statutory mechanism to provide fire fighting services in Winchester. This statute was enacted in 1970, so the cases cited by the parties which predate its enactment are not controlling. *See, e.g.,*

*Burson v. City of Bristol*, 176 Va. 53, 10 S.E.2d 541 (1940). This section makes the volunteer firefighting company "an instrumentality of the contracting . . . [city] . . . and as such exempt from suit for damages done incident to fighting fires." *National Railroad Passenger Corporation v. Catlett Volunteer Fire Company, Inc.*, 241 Va. 402, 409, 404 S.E.2d 216 (1991). In *Catlett*, the fire truck was in route to a fire and collided with the defendant's train, and the Supreme Court held that:

1. The statutory exemption from suit was the equivalent of sovereign immunity. *Id.* at 410.

2. Both the fire companies and employees of the fire companies could assert the statutory shield. *Id.* at 412.

3. Whether the statutory defense of sovereign immunity could be asserted depended upon the traditional test of whether the act in question involved the use of judgment and discretion. *Id.* at 412-413.

To trigger the statutory protection, the act in question must be "done incident to fighting fires." Virginia Code § 27-23.6(B). In *Catlett, supra* at 408, the Supreme Court applied the *Black's Law Dictionary* 762 (6th ed. 1990) definition of incident, "[s]omething dependent upon, appertaining or subordinate to or accompanying something else of greater or principal importance, something arising or resulting from something else of greater or principal importance," to determine the scope of the statute's grant of protection. This is a rather elastic definition, and the *Catlett* Court determined that driving to a fire was incident to firefighting. The support acts of the fire company at its station are many and varied, ranging from equipment maintenance and building maintenance to fund raising activities like bingo. While all such activities could be argued to be acts incident to the firefighting activities of the fire company and while the act is to be liberally construed, *National Railroad Passenger Corp. v. Catlett Volunteer Fire Co.*, 241 Va. 402, 407, 404 S.E.2d 216 (1991), there are limits beyond which the act's umbrella of protection may not be stretched. By its express terms the act applies only to acts "done incident to firefighting and rescue services." Clearly, the statute provides door to door protection to the volunteer fire company when it is responding to a fire or rescue call. Just as clearly, driving a fire truck to the annual company picnic or in the local parade are not acts "done incident to fighting fires," nor is clearing snow at the local fire hall an act done incident to fighting fires insofar as the statutory grant of protection is concerned.

### 3. *Independent Contractor*

Where the firefighting immunity statute does not apply and other activities of the volunteer fire departments are at issue, the relationship between the City of Winchester and the fire companies is purely that of principal and independent contractor. In *MacCoy v. Colony House*, 239 Va. 64, 67, 387 S.E.2d 760 (1990), the Supreme Court stated the general principles governing the determination of whether an employed person is an independent contractor or an employee:

> "An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." *Craig v. Doyle*, 179 Va. 526, 531, 19 S.E.2d 675, 677 (1942) (quoting *Epperson v. De-Jarnette*, 164 Va. 482, 486, 180 S.E. 412, 413 (1935)).
>
> If under the contract the party for whom the work is being done may prescribe not only what the result shall be, but also direct the means and methods by which the other shall do the work, the former is an employer, and the latter an employee. But if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employee, but an independent contractor.
>
> *Craig*, 179 Va. at 531, 19 S.E.2d at 677 (quoting *Kelley's Dependents v. Hoosac L. Co.*, 95 Vt. 50, 53, 113 A. 818, 820 (1921)). [Cites omitted.]
>
> Ordinarily, whether one acts as an employee or as an independent contractor is a question of fact for a jury. *Emmerson v. Fay*, 94 Va. 60, 64, 26 S.E. 386, 387 (1896). A court decides the question only when reasonable minds could not differ. *See Griffith v. Electrolux Corp.*, 176 Va. 378, 382, 11 S.E.2d 644, 646 (1940).

The primary touchstones distinguishing independent contractors from employees are the contract between the parties and the extent to which the principal controls the work of his contractor. *Elizabeth River Tunnel Dist. v. Beecher*, 202 Va. 452, 458 (1961); *Ross v. Schneider*, 181 Va. 931, 939 (1943). However, the control test is the most important. *See Richmond Newspapers v. Gill*, 224 Va. 92, 98 (1982); *Baker v. Nussman*, 152 Va. 293, 303-04 (1929). Unlike employees, independent contractors undertake to produce a given result without being in any way controlled as to the

method by which they attain that result. *Intermodal Servs., Inc. v. Smith*, 234 Va. 596, 601 (1988); *Glenmar v. Cinestate v. Farrell*, 223 Va. 728, 734 (1982); *Richmond Newspapers*, 224 Va. at 98; *Elizabeth River Tunnel Dist.*, 202 Va. at 459; *Craig v. Doyle*, 179 Va. 526, 531 (1942). In this case, the Winchester volunteer fire companies are separate, independent, incorporated entities. (Motion for Judgment, ¶¶ 4-5.) The City engages them only as necessary to fight fires. It does not control the actions of the independent fire companies in maintaining their firehouses and surrounding grounds.

The City does not select the individual volunteers or pay them for their work. Moreover, if the volunteer departments' members were employees of the City, they would not require a statutory extension of the protection of sovereign immunity. *See, e.g. Downs v. City of Roanoke*, 16 Va. Cir. 330 (Roanoke 1989) (witness was killed while being interviewed at scene of accident); and *Lee v. Harmon*, 30 Va. Cir. 476 (Richmond 1971) (motor vehicle collision with fire truck responding to emergency alarm).

In this case neither Boyce nor Campbell were employees of the City, nor were they being directly supervised by employees of the City. They were simply clearing snow incident to their responsibilities as members of their respective volunteer fire companies. The snow clearing activities are only tangentially related to the fire fighting functions for which the respective volunteer fire companies are employed by the City, and reasonable minds could not differ on this question. Therefore, insofar as snow clearing activities are concerned, the relationship between the City and the individual volunteer fire companies is that of principal and independent contractor.

### 4. *Snow Removal is not Inherently Dangerous*

The employer or principal of an independent contractor is not liable for the negligence of the contractor or its servants. *MacCoy v. Colony House Builders*, 239 Va. 64, 69 (1990); *Kesler v. Allen*, 233 Va. 130, 134 (1987); *Broaddus v. Standard Drug Co.*, 211 Va. 645, 649 (1971); *Norfolk & Western Ry. v. Johnson*, 207 Va. 980, 983 (1967). Moreover, the City owes only such duties to the contractor's servants as it owes strangers. *Davis Bakery v. Dozier*, 139 Va. 628, 635 (1924).

Exceptions do exist to the general rule that an employer is not liable for the work of his independent contractor. Vicarious liability may arise when the work is unlawful, a nuisance, inherently dangerous, or will in the natural course of events produce injury unless special precautions are taken. *MacCoy*, 239 Va. at 69; *Kesler*, 233 Va. at 134 ; *Broaddus*, 211 Va.

at 649; *Norfolk & Western*, 207 Va. at 983-84. However, clearing snow is not an inherently dangerous activity. *See* Restatement (Second) of Torts § 520.

### 5. *No Legal Duty*

For the Plaintiff's action to be sustained against the City, a legal duty must exist, and there must be a violation of that duty with resulting damage. *Burdette v. Marks*, 244 Va. 309, 311 (1992); *Marshall v. Winston*, 239 Va. 315, 318 (1990). Generally, a person or entity has no duty to control the conduct of third persons to prevent physical harm to another. *Burdette*, 244 Va. at 311; *Marshall*, 239 Va. at 318; Restatement (Second) of Torts §§ 315 and 520 (1965). The general rule applies unless a special relationship exists (1) between the defendant and the third person that imposes a duty on the defendant to control the third person's conduct, or (2) between the defendant and the plaintiff that gives a right to protection. *Burdette*, 244 Va. at 312; *Marshall*, 239 Va. at 318; Restatement § 315. Only a violation of a special duty owed to a specific, identifiable person or class of person, as opposed to a duty owed to the public in general, will give rise to civil liability of a governmental officer or entity. *See Burdette*, 244 Va. at 312.

On the facts alleged in this case, there is no special relationship giving rise to a duty by the City to instruct volunteer fire companies in the proper use of snow removal equipment not being used for firefighting purposes. No Virginia statute imposes a special duty on the City, nor do the common law principles concerning independent contractors or master and servant liability create a special relationship mandating such an obligation.

### 6. *Fellow Servant Doctrine Does not Apply*

"In most, if not all, jurisdictions the so-called 'fellow servant' rule has been abrogated or drastically limited by statute, and the rule is very rarely of significance at the present time." 53 Am. Jur. 2d, *Master and Servant*, § 295. In Virginia the passage of the Virginia Workers' Compensation Act, Virginia Code §§ 65.2-100 *et seq.*, has dramatically reduced its impact. "Under the [Workers' Compensation] Act both employer and employee surrender former rights and gain certain advantages . . . . The employer surrenders his right of defense on the grounds of contributory negligence, assumption of risk, and the fellow servant rule." *Fauver v. Bell*, 192 Va. 518, 65 S.E.2d 575 (1951); *Bulala v. Boyd*, 239 Va. 218, 389 S.E.2d 670 (1990). Under some circumstance, apparently not applicable to this case,

volunteer firemen may be subject to the Workers' Compensation Act. *See* Virginia Code § 65.2-101 (definition of employee subsections 1(l) and 2(k)).

The fellow servant doctrine is a creature of the common law, 53 Am. Jur. 2d, *Master and Servant*, § 296, and its policy underpinnings and requirements were extensively discussed in *Norfolk & Western Ry. Co. v Donnelly's Adm'r*, 88 Va. 853, 856-857 (1892), quoting *Am. and Eng. Enc. of Law*, p. 821:

> The general rule resulting from considerations as well of justice as of policy is that he who engages in the employment of another for the performance of specified duties *for compensation*, takes upon himself the natural and ordinary risks and perils incident to the performance of such services, the perils arising from the carelessness and negligence of those who are in the same employment are no exceptions to this rule . . . . [Emphasis added.]

While the fellow servant doctrine may have some vestigial life in Virginia, *see, e.g. LeSeuer v. Ayres*, 191 Va. 191, 60 S.E.2d 26 (1950) (except as to employees of railroads and those covered by the Workers' Compensation Law, the doctrine has not been changed), it is in essence an economic concept developed at the advent of the industrial revolution in the nineteenth century, and it had never been applied in Virginia appellate decisions to a case involving volunteers. It has no application to this case, because Boyce was a volunteer, not a paid employee of the fire department. The right of a volunteer to recover is based on general principles of negligence. 53 Am. Jur. 2d, *Master and Servant*, § 179. Those principles of general negligence apply to the plaintiff's action against Charley Rouss Fire Company.

## 7. *Sovereign Immunity*

The facts of this case present the plaintiff with a dilemma *vis a vis* the issue of sovereign immunity. To avoid the protection of sovereign immunity, the plaintiff points out that "no emergency existed here when fire fighters were clearing snow from *a private parking lot* and not public roads." (Emphasis in original.) (Plaintiff's Memorandum, p. 7.) Therefore, the plaintiff relies upon *Burson v. City of Bristol*, 176 Va. 53, 10 S.E. 541 (1941), where the City employed volunteer firefighters to pull down walls of a burned building to make the adjoining streets safe, and the Supreme

Court of Virginia held that members of a volunteer fire department were not acting in the discharge of their duties as firemen, so sovereign immunity did not attach to their actions. *Id.* at 66. The *Burson* decision turned on the fact that the volunteer firemen had been actually hired by the city manager and were being directed in their actions by the city manager in pulling down the remains of a building that had been destroyed by fire. *Id.* at 62.

In this case, the volunteer firemen were not hired by or directed in their activities by the City. They were simply clearing snow from a private parking lot, so they were not performing a governmental function. Assuming *arguendo* that the volunteer fire fighters in this case had been exercising some governmental function as agents of the City in removing the snow, then sovereign immunity might apply. In *Stanfield v. Peregoy*, 245 Va. 339 (1993), the Supreme Court of Virginia considered whether sovereign immunity should be applied in a case involving the operation of a snow plow and a salt truck. The plaintiff alleged that the actions of the defendant were ministerial in nature, and that liability should attach. The court, however, disagreed, noting that the activities engaged in required the exercise of some judgment and discretion by the driver:

> [the driver] had to decide whether the conditions of a particular street or intersection required plowing or salting, or both. When spreading the salt, the defendant's activities at the time of the accident, he was required to determine the amount of salt to be applied in the area over which it should be spread. Indeed, the exercise of discretion was involved even in the initial decision to undertake the plowing and salting at all.

*Id.* at 343-44. Where the proprietary and governmental functions of a municipal government coincide, "the governmental function is the overriding factor." *Bialk v. City of Hampton*, 242 Va. 56, 58, 405 S.E.2d 619 (1991). However, clearing a private parking lot does not further the "common good;" the area in question was not one which fire trucks had to cross to get to the public street. As earlier determined, the snow clearing activity in this case was conducted by the fire department as independent contractor with the City, so the issue of the City's sovereign immunity is not reached on facts of this case.

## 8. *Statutory Notice*

In addition to the substantive grounds on which to grant the City's motion for summary judgment, which were discussed above, there is an additional procedure ground on which to grant the motion. Virginia Code § 8.01-222 provides as follows:

> No action shall be maintained against any city or town for injury to any person or property or for wrongful death alleged to have been sustained by reason of the negligence of the city or town, or of any officer, agent or employee thereof, unless a written statement by the claimant, his agent, attorney or representative of the nature of the claim and the time and place at which the injury is alleged to have occurred or been received shall have been filed with the city attorney or town attorney, or with the mayor, or chief executive, within six months after such cause of action shall have accrued . . . .

"The purpose of the statute is to enable a city to make prompt investigation of tort claims, to correct dangerous or defective conditions, and, where justified, to avoid the expense and delay of litigation by making voluntary settlements with claimants." *Town of Crewe v. Marler*, 228 Va. 109, 112, 319 S.E.2d 768 (1984) (quoting *Heller v. City of Va. Beach*, 213 Va. 683, 685, 194 S.E.2d 696 (1973)).

The Virginia Supreme Court has ruled that the provisions of the notice statute are mandatory, but not jurisdictional. As a consequence, the court has ruled that the section is to be liberally construed and that substantial compliance with its terms are sufficient. *Miles v. City of Richmond*, 236 Va. 341, 344 (1988). The plaintiff admits that no written statement of any kind was provided to the city attorney, the city manager, or to the mayor which could in any way be construed as complying with the mandatory provisions of the statute. In response to the City's Request for Admissions, the plaintiff explains that he should be held to have complied with the notice requirements because "agents of the City of Winchester and Winchester Fire and Rescue Department had notice of the accident and conducted an extensive investigation of the accident." (Plaintiff's Responses to City of Winchester's First Request for Admissions, ¶ 1; Exhibit 5). The plaintiff points to three documents which he claims established the fact that the City had actual notice of the accident: an April 21, 1993, memorandum by Sharon Grombling, Safety Officer for the City of Winchester; a June 10, 1993, investigation report prepared by Captain Frank Wright of

the Winchester Fire and Rescue Department; and a March 16, 1993, investigative report prepared by the Winchester Police Department. These documents establish only that the City had actual notice of the accident and injuries, but they provide no suggestion that the plaintiff has complied with the notice statute or that these persons were acting as agents of the plaintiff.

In *Town of Crewe v. Marler*, 228 Va. 109, the Supreme Court rejected a plaintiff's contention that she should be excused from compliance with the statute since "everyone knew where [the accident] occurred." In that case, the plaintiff's attorney wrote two letters to the Crewe Town Manager, in which he stated that his client had fallen and injured herself on a defective sidewalk in the town. The town manager actually testified that he was personally aware of the precise location of the fall and that he had discussed the accident with the plaintiff, her husband, and her attorney within four months of the event. The Supreme Court held that despite the letters and the discussions, the plaintiff did not provide sufficient written description of the location of the accident, and the court rejected her contention "that the legislature did not intend to require a claimant to spell out the exact location of the injury, when everyone knew where it occurred." *Id.* at 112. In rejecting the plaintiff's argument, the Supreme Court held as follows:

> The General Assembly, of course, has not made an exception in the statute in favor of those claimants who fail to state the place at which an injury occurs, even though "everyone" may know the location of the injury . . . . For this court to place any limitation on the clear and comprehensive language of the statute, or to create an exception where none exists under the guise of statutory construction, would be to defeat the purpose of the enactment and to engage in judicial legislation. Consequently, we hold the purported notice contained in the letters in issue fail to comply substantially with this statute, even though the city had actual notice of the time and place of the accident.

*Id.* at 113-114. The principles enunciated in *Town of Crewe* are reenforced by the Supreme Court's recent reliance upon that holding in an opinion issued as recently as March 1, 1996. *See Halberstam v. Commonwealth of Virginia*, 251 Va. 248 (1996) (Written notice given under the Virginia Tort Claims Act did "not specify the location of the injury." "Actual notice does not obviate . . . [the plaintiff's] . . . duty to strictly comply with the Act's notice provisions.")

In two cases, the Supreme Court of Virginia has held that a plaintiff who did not provide written notice has substantially complied with the statute. *See Miles v. City of Richmond*, 236 Va. 341 (1988); *Heller v. City of Va. Beach*, 213 Va. 683 (1973). In each of those cases, the person injured made an oral report to a city official, providing all of the information required under the statute. In each case, the city official prepared a written report of the accident and the required information and forwarded the statements to the city attorney. In *Heller*, the court pointed out that although the written statement was not prepared by the injured person, "it was made in his presence with his approval as he furnished the necessary information," and that the police officer who prepared the statement and forwarded it to the city attorney "did so as his agent or representative in substantial compliance" with the statute. 213 Va. at 686. In *Miles*, the court likewise held that the city official "who prepared, signed, and forwarded to the city attorney a statement of the plaintiff's claim, likewise did so as her agent or representative in substantial compliance with the statute. 236 Va. 344-45. In that case, the court pointed out that "the information furnished by the plaintiff, as recorded by [the city official], had all the characteristics of a statement of a potential claim against the city." *Id.* at 345.

In this case, since no statement was provided by Samuel Boyce, his personal representative, or his attorney to any city official for the purpose of reporting a potential claim against the City, it is impossible to even suggest that the plaintiff has substantially complied with the statute. In *Miles*, it was held that the city official to whom the claim was reported was acting in a dual capacity. "Representing the city, [the official] gave routine assistance to a person injured on city property, investigated the incident, arranged for a technician to examine the malfunctioning elevator, and distributed a detailed report to appropriate administrative officials. Representing the citizen, [the official] prepared and completed a written statement of a potential claim which was forwarded to the city attorney." *Id.* In this case, there is no evidence that any city official acted in any capacity other than in representing the City. Since the plaintiff completely failed to comply, substantially or otherwise, with the notice requirement set forth in § 8.01-222 of the Code of Virginia, summary judgment should be granted, dismissing the plaintiff's claim against the City of Winchester.

### 9. *Ownership of the Loader*

The accident in question occurred on private property owned by Charley Rouss Fire Company. Even if the front end loader which killed Boyce was owned by the City of Winchester, the mere fact of that ownership would not change the result in this case. There is no claim of negligent entrustment, *see Hack v. Nester*, 241 Va. 499, 404 S.E.2d 42 (1990), or claim that the loader was defective. (Plaintiff's Exhibit 11.) *See Smith v. Mooers*, 206 Va. 307, 142 S.E.2d 473 (1965).

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. The City of Winchester's Motion for Summary Judgment is granted, and the Motion for Judgment is dismissed as to the City of Winchester.

2. Charley Rouss Fire Company's Motion for Summary Judgment is denied.