# Richmond

## SCOTT H. BARBER, ADMR., ETC. v. TEXTILE MACHINE WORKS.

November 24, 1941.

Record No. 2414.

Present, All the Justices.

The opinion states the case.

*George G. Grattan, III, Ward Swank* and *Wharton & Aldhizer,* for the plaintiff in error.

*Conrad & Conrad,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The plaintiff below, in the capacity of administrator, instituted an action against Otto Ammann and Textile Machine Works, a Pennsylvania corporation, to recover for the death of Susan Barber, plaintiff's decedent, alleged to have been caused by the negligent operation by Otto Ammann of a car owned by him. The alleged liability of Textile Machine Works is predicated upon the contention that said Ammann was a servant or agent of the non-resident corporation, Textile Machine Works,

and engaged in the performance of his duties at the time of the accident. The judgment complained of sustained a plea to the jurisdiction of the court, filed by the defendant Textile Machine Works, and dismissed the action as to it.

Textile Machine Works has its principal office in Reading, Pennsylvania. Its main business is that of manufacturing knitting mill machinery, and selling and installing the same throughout a large territory of the United States.

The defendant, Otto Ammann, was employed by the Textile Machine Works as an "erector" or a person who installed the machinery sold by the company in various parts of the United States.

The collision out of which the present action arose occurred on United States Highway No. 11, near Harrisonburg, in Rockingham county, Virginia, on the evening of December 15, 1939. Ammann, in compliance with an order of the company, was returning to Pennsylvania from Greenville, Tennessee, where he had completed an assignment of work for the company, when his automobile, operated by himself, collided with the car in which plaintiff's decedent was riding. She was killed as a result of the collision.

Process as to both defendants was served on the Director of the Division of Motor Vehicles of Virginia, pursuant to section 2154(70), (i), of Virginia Code (Michie) as amended, which provides:

"The acceptance by a non-resident of the rights and privileges conferred by this section as evidenced by his operation, either in person or by an agent, or employee, a motor vehicle, trailer or semi-trailer hereunder, or the operation by a non-resident, either in person or by an agent, or employee of a motor vehicle, trailer or semi-trailer on a highway in this State otherwise than under this section, shall be deemed equivalent to an appointment by such non-resident of the director or his successors in office, to be his true and lawful attorney upon

whom may be served all lawful process against and notice to such non-resident in any action or proceeding against him growing out of any accident or collision in which such non-resident or his agent or employee may be involved, while operating a motor vehicle, trailer or semi-trailer on such highway, and said acceptance or operation shall be a signification of his agreement that any such process against or notice to him which is so served shall be of the same legal force and validity as if served upon him personally. * * *''

The defendant, Textile Machine Works, appeared specially and filed its sworn plea to the jurisdiction of the court, denying that it could be properly served under this section since it did not own the automobile driven by Ammann and had no control over the operation of the same, and since the defendant Ammann was not acting as the agent of the company in the operation of said car at the time of said injury.

This plea was sustained by the judgment of the trial court, and the correctness of its action is the single issue to be decided by this court.

Was Ammann while operating his car at the time of the accident doing so as the agent or employee of Textile Machine Works so as to subject the latter to the statutory provision for service of process pursuant to Code, section 2154(70), (i)?

An examination of the facts concerning Ammann's employment and the nature of his work is necessary in order to determine his exact relation with the defendant company. As has already been pointed out, he was an "erector" whose duty it was to install and repair machinery which the textile company sold to its customers over an extensive territory. Ammann, who had been employed by the Textile Machine Works for several periods dating from 1919, was steadily in their employment from April, 1937, to March 4, 1940, at which time he was laid off because of lack of work. From February 29, 1940, to March 4, 1940, he was carried on the company inactive list.

On November 20, 1939, Ammann was sent to Greenville, Tennessee, to work on an assignment at the James Hosiery Mills, which he completed December 14. He then wired the company for instructions and was directed to return home and await further orders. As we have seen, it was while driving home to Pennsylvania in compliance with the company's instruction that he became involved in the collision which gave rise to the present action.

Ammann, like other "erectors" of Textile Machine Works, would be dispatched to a distant plant with instruction as to his work outlined for him by the company. He received 80c an hour for the time spent working at the plant; he was paid a salary for the hours spent in traveling to the plant where the machinery was installed and returning therefrom. In addition, he was given traveling expenses for himself and allowed the cost of transporting necessary working tools. His traveling expense was based upon the railroad fare to and from the terminal points. His salary was payable weekly.

No written contract of employment existed between Ammann and Textile Machine Works. The agreement was partly oral and partly established by custom. Ammann would file a report each week concerning his progress in carrying out the instructions of the company.

Ammann's movements were directed by his employer. He would be sent to a plant to install or erect machinery. When he had finished it was customary that he wire for further instructions. Whereupon, according to custom, the company would direct him to go to another plant if there was any work to be done, or it would instruct him to return home where he was on immediate call by the company.

It is clear from the record that the Textile Machine Works had the absolute power of dismissal of Ammann. It could shift him to the inactive list at any time or actually drop him from their rolls as was actually done on March 4, 1940.

■ A careful consideration of these facts leads us to the conclusion that Ammann was an agent of the Textile Machine Works.

■ The legal principles to be applied here are not new, but the facts are unlike any we have been called upon to consider. In two recent decisions this court has enunciated the principle that an employee's status is to be determined by the power of control, either exercised or potential, which the employer retains over the activities of the employee in the things to be done preparatory to obtaining the final results. This operative fact of control may be inferred from various evidentiary facts.

In *Griffith* v. *Electrolux Corp.*, 176 Va. 378, 11 S. E. (2d) 644, this court held that the Electrolux Company did not possess such control over its salesman, who was consequently determined to be an independent contractor. The contract of employment there involved did not contemplate or provide for the requisite degree of control which would support a finding of agency. There was no absolute power of dismissal in the employer; there was no potential power in the company whereby it could control the preparatory activities of the employee. Under the contract the salesman could devote whatever time he wished in pursuit of his job, with the specific right to reject suggestions offered by the company. He could set his own hours of work and plot his own specific routes of solicitation.

On the other hand, in applying the same ultimate test of control to a different set of facts, this court held that a gasoline distributor for the Texas Company was an agent or servant and not an independent contractor. *Texas Co.* v. *Zeigler*, 177 Va. 557, 14 S. E. (2d) 704. In that case the contract of employment savored of a retention of control by the company over its distributor. There the distributor specifically agreed to distribute diligently all products consigned to him in trucks meeting company specifications and emblazoned with their insignia.

The factual distinction between the *Texas case* and the *Electrolux case* is clearly discernible. In the *Electrolux case* the only control residing in the company was that whatever business the salesman obtained and through whatever methods, certain specified terms of sale had to be followed. In the *Texas case*, on the other hand, there was not simply a control over the final results of distributing gasoline, but also over the *means* of distribution. The power of the Texas Company over the preparatory activities of its distributor, whether exercised or potential, was derived from the contract of employment requiring the agent to distribute diligently, as well as from other terms of the contract indicative of a retention of control by the Texas Company.

Applying the test of control to the instant case, we see that the relation of Ammann to the Textile Machine Works was that of an agent as distinguished from the salesman in the *Electrolux case*. The company had an absolute power of dismissal. Coupled with this power was the right to direct the activities of Ammann, this right being contemplated by the parties in the oral agreement and the established custom of the company. Ammann was a mobile unit of the company, conducting a highly important phase of its business. He had no choice of territory but went where he was directed to go. He did not work on a commission basis, but was paid a salary based on his hours of work. His employer had the right, buttressed by its power of dismissal, to direct when and where he should go. It seems inescapable, therefore, that Ammann was an agent and not an independent contractor.

The agency of Ammann having been established, we must decide whether or not he was acting within the scope of his authority at the time of the accident so as to make his alleged negligent operation of his automobile imputable to the Textile Machine Works on the principle of *respondeat superior*. The exact issue thus presented is whether or not Ammann had authority to use

his own automobile in traveling on company business. As may be readily seen, this was not in issue in the case of *Texas Co.* v. *Zeigler, supra.*

The Textile Company contends that it in no wise authorized Ammann to travel by automobile. In support of this defense the company points out that it had no actual knowledge that Ammann was traveling by automobile; that the nature of his work in no way required such use; and that his compensation both for traveling expenses and for the time spent traveling was based upon railroad fares and railroad schedules respectively. The defendant company thus argues that Ammann was not its agent in the operation of a vehicle owned by him.

However, the evidence shows the defendant company to have been on notice that forty per cent of its "erectors" used their own automobiles when traveling on company business. Further, Ammann had been using his own automobile for transportation since January, 1939, and the accident complained of here occurred in December of that year. Of still more damaging effect to the company's disclaimer of knowledge of Ammann's use of his own automobile is the following circumstance: Ammann's compensation while returning from Greenville, Tennessee, (upon which trip the accident complained of occurred) was entitled to be for some eighteen hours, this being the time based upon train schedule. However, Ammann filed his report claiming compensation only for fifteen hours, the time actually consumed in making the trip by automobile. The company paid him for only fifteen hours, thus benefiting itself from the use of his car.

The mere fact that the automobile which occasioned the injury was owned or hired by the servant will not preclude recovery from the master if the servant's use of the automobile was authorized, either expressly or impliedly, by the employer. *Dillon* v. *Prudential Ins. Co. of America,* 75 Cal. App. 266, 242 P. 736.

On the other hand, the master is not liable under

the doctrine of *respondeat superior* for personal injuries inflicted by the servant while engaged in unnecessarily driving his own automobile upon the master's business, and without the latter's knowledge, or express or implied authorization. *Kennedy* v. *Union Charcoal & Chemical Co.*, 156 Tenn. (3 Smith) 666, 4 S. W. (2d) 354.

The mere fact that an automobile was used by the servant on one occasion in the master's business, unaccompanied by any evidence of similar acts in the past, does not justify the inference that the servant was later authorized to use the machine upon the master's business. *McCaughen* v. *Missouri Pac. R. Co.* (Mo. App.), 274 S. W. 97.

But where a servant used his own car repeatedly in his master's business with the latter's knowledge and assent, there arises an implied authority to use it in the master's business, rendering him liable to respond for the negligence of those using it in connection with his business. See *McCaughen* v. *Missouri Pac. R. Co.*, *supra*, at page 101.

The Textile Machine Works may not shield itself from liability in this case by the contention that it had no knowledge that Ammann specifically was using his own car in its business, when it did have the general knowledge that some forty per cent of its "erectors" were repeatedly using their own cars in its business, and Ammann was a member of this class.

We do not agree with the Massachusetts court in its decision in the case of *Khoury* v. *Edison Electric Illuminating Co.*, 265 Mass. 236, 164 N. E. 77. There the court, in dealing with facts very similar to those of the instant case, refused to impute liability to the employer company for an employee's negligent operation of his own car. In so far as that case holds that the employee was an independent contractor it is not in accord with our views as expressed in our most recent cases on the subject. As has already been pointed out, once the agency of the employee has been established the only

additional inquiry should be whether or not the agent was acting with authority and within the scope of his employment at the time of the accident complained of.

■ Under the facts of the instant case we find that Ammann, an agent of the Textile Machine Works, had implied authority to operate his own automobile in the business of the company. Furthermore, the company had at least potential control over the operation of his car, inasmuch as he was being paid a salary while traveling and was subject to the control of the company as to where and when he should go. He was also acting within the scope of his employment at the time of the collision when he was returning to Pennsylvania in compliance with the instructions of the defendant company.

■ A consideration of these outstanding facts, some of which have been previously stated, strengthen our conclusion: the employer expressly directed Ammann to travel but did not expressly direct the means of travel. Forty per cent (or nearly one-half) of those similarly engaged, which numbered 105, used their own automobiles, and this fact was actually known by the employer. It is therefore apparent that the company acquiesced in this mode of transportation. It also knew that Ammann and those similarly employed were bound to travel by some means of transportation in order to reach their work. Common knowledge tells us that the ordinary means of travel are trains, busses and private vehicles. These employees were not prohibited by the employer from using their own private automobiles. In fact it is not unreasonable to assume that they would use their own automobiles in the absence of some prohibitive order from the company.

■ It is also a matter of common knowledge that men in this kind of employment frequently use their own automobiles to go to and from their work. It may be more reasonable in expense and often conserves time. Inconvenient trains or bus schedules and connections might cause added expense and unreasonable delay.

This is a consideration which might reasonably have been contemplated. If Ammann had traveled by train or bus it would have been under the implied authority of the company, there being no express direction pertaining to his means of transportation. Likewise, when he selected his own automobile to go and return from his work he was acting under the implied authority of the company which controlled his action and paid him wages for all the time consumed in traveling.

The Textile Machine Works was thus subject to service of process as provided for by Code, section 2154(70), (i), and liable for the negligence, if any, of its agent in the operation of the latter's car at the time of the collision.

We reverse the judgment and remand it to the lower court for a new trial not inconsistent with this opinion.

*Reversed and remanded.*