# Richmond

## J. H. CRAIG, ET AL. v. J. F. DOYLE (DECEASED) ETC., ET AL.

April 13, 1942.

Record No. 2556.

Present, All the Justices.

The opinion states the case.

*Leon T. Seawell*, for the appellants.

*Venable, Miller, Pilcher, Parsons & Kyle*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

The appellants, employers, and their insurance carrier, The Employers' Liability Assurance Corporation, appeal from an order of the Industrial Commission of Virginia allowing a claim of compensation to Florence A. Doyle, widow, and infant daughter for the death of their husband and father, J. F. Doyle.

The sole issue for our determination is the contention of the insurance carrier that Doyle was an independent contractor and not an employee within the provisions of the Virginia Workmen's Compensation Act, Virginia Code, 1936, sections 1887 (1), *et seq.*

The evidence is almost entirely without contradiction. The dispute is over the conclusion to be drawn therefrom.

J. F. Doyle was a carpenter and also a licensed building contractor. After the economic depression of 1932-3, he took some jobs as a contractor, but did much more work as an employee on an hourly and weekly basis of compensation. In the last eight months of his life, he was employed on several jobs on an hourly basis. He did not carry any men regularly on his payroll.

Doyle made the following written contract with Lola M. Craig and her husband, J. H. Craig, to remodel their Norfolk, Virginia, residence into a two-family apartment:

"This contract made and entered into this 31st day of December, 1940, by and between Lola May Craig and James H. Craig, her husband, parties of the first part, and J. F. Doyle, party of the second part, in which the party of the second part agrees to *remodle* their residence into a two-family apartment, for the sum of cost plus ten per cent, the party of the second part is to receive one dollar per hour for the time he makes on job as wages during construction and ten per cent on total cost at completion, and party of the second part further agrees to employ the necessary additional labor as cheaply as can be had, commensurate with the skill required to perform the work in first class manner. And the parties of the first part agree to furnish to party of the second part cash each week to pay for all labor performed, and at completion to pay the balance of cost of the entire job. The parties of the first part further agree to relieve party of the second part from any responsibility of damage that might occur during the progress of the work for the privilege of having anything that they deem necessary for the protection of the property from damage at their own expense and the party of the second part will perform same to the best of his ability in lieu thereof.

|  |  |  |
|---|---|---|
| (Signed) | JAMES H. CRAIG | (Seal) |
| (Signed) | LOLA MAY CRAIG | (Seal) |
| (Signed) | J. F. DOYLE | (Seal)" |

Prior to entering into the contract, the parties agreed that the work should be done under the Workmen's Compensation Act. Carrying out the terms of the contract that Doyle was to be relieved from any responsibility for damages that might occur during the progress of the work, Craig took out a workmen's compensation and employers' liability policy issued by the Employers' Liability Assurance Corporation to cover the liability that might be occasioned to any men who might be hurt while employed on the job.

Doyle gave Craig a rough estimate that the job would cost about $3,700 for the labor and materials.

Only three men worked on the project, Doyle, Doyle's helper, and a bricklayer, all of whom were paid directly by Craig.

On January 11, 1941, just a week after he began work, Doyle fell from the top of the sun porch of the building to the ground, receiving injuries from which he died the next day.

Mrs. Doyle testified that she was familiar with the agreement between her husband and the Craigs; and that it was not a contract job but was being performed on an hourly basis under the direct supervision and control of Craig.

Craig testified that he employed Doyle by the hour, with payment to be made weekly; that he personally superintended the work of Doyle and told him what he wanted to be done; that he watched the work and directed him to do what he thought necessary; and that if the work had not been done according to his satisfaction, he would have dispensed with Doyle's services the same as with any other man on the job. He deducted from Doyle's wages the social security tax and paid it to the Government, and after Doyle's death paid the latter's wages to his widow.

The only evidence offered in support of the theory of the insurance carrier was a building permit, issued by the building inspector of the city of Norfolk on December 27, 1941, four days prior to the date of the contract, naming Mrs. Craig as the owner and Doyle the contractor. The building inspector,

who issued the permit to Doyle, said that he knew nothing of the agreement between the Craigs and Doyle.

Neither the fact that Doyle was a licensed contractor nor that he secured a building permit before the contract was entered into, prevented him from making an agreement to work as an employee if he so chose. It is highly significant that Doyle agreed to work under the Workmen's Compensation Act; that compensation insurance was taken out by Craig for his protection; and that the social security taxes were deducted from Doyle's pay. All of the positive facts and these circumstances indicate that he chose to work under the contract as an employee.

The Industrial Commission found that the manner in which the work was performed showed that Doyle was both working and supervising the work of other employees; that he worked under the immediate supervision of the owners of the house who retained and exercised control over the means and method of the work; and that he engaged himself as an employee to work and act as foreman of other employees for the remuneration specified in the contract of employment.

The facts amply support the conclusion of the Commission.

Commissioner Nickels, who delivered the opinion for the Commission, quite properly said:

"A careful reading of the contract of employment fails to show any expression relating to supervisory control. No allusion is made about doing the work according to certain specifications or about holding the deceased to given results free from the control of the owners as to the means and methods of doing the work. The contract quoted does not *per se* create the relation of independent contractor to owner. The fact that the owners did control the means and methods of doing the work and submission thereto by the deceased appears to be conclusive on the question of supervisory control. This was not in conflict with the agreement and appears to have been the real intent of the parties as to how the work was to be executed."

In *Epperson* v. *DeJarnette*, 164 Va. 482, 180 S. E. 412,

Mr. Justice Holt, at page 486, approved the following definition of an independent contractor:

[■ " 'An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result.' Jaggard on Torts, section 73, page 228."

■ " 'The law defined an independent contractor to be a person who is employed to do a piece of work without restriction as to the means to be employed, and who employs his own labor and undertakes to do the work according to his own ideas, or in accordance with plans furnished by the person for whom the work is done, to whom the owner looks only for results.' *Boyd, Higgins & Goforth* v. *Mahone*, 142 Va. 690, 128 S. E. 259, 262."

See also, *Davis Bakery, Inc.* v. *Dozier*, 139 Va. 628, 124 S. E. 411; *Crowder* v. *Haymaker*, 164 Va. 77, 178 S. E. 803; *Barber* v. *Textile Machine Works*, 178 Va. 435, 17 S. E. (2d) 359, and cases cited.

■ The appellants in their brief concede that the most significant test, as stated in the foregoing cases, is: "Who has the power to control and direct the servants in the performance of their work?"

Cases involving the application of this test are legion. The points of distinction, however, are set out in varying terms according to the circumstances of each individual case. We find the general principle nowhere better stated than in *Kelley's Dependents* v. *Hoosac Lbr. Co.*, 95 Vt. 50, 53, 113 A. 818, 820; 20 N. C. C. A. 902, 905:

■ "If under the contract the party for whom the work is being done may prescribe not only what the result shall be, but also direct the means and methods by which the other shall do the work, the former is an employer, and the latter an employee. But if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employee, but an independent contractor. So the master test is the right to control the work. And it is this right which

properly differentiates service from independent employment."

The status of the employment of Doyle tested by the "power of control" which Craig, the employer, retained over the work to be done shows that Doyle was engaged as an employee and not as an independent contractor. *Baker* v. *Nussman*, 152 Va. 293, 147 S. E. 246.

Doyle was controlled in his methods and means of work under a contract of hire the same as any other employee.

The request of counsel for the appellants to increase the amount of the fee allowed to them by the Industrial Commission is refused, the allowance heretofore made by the Commission being deemed adequate.

The award of the Industrial Commission is affirmed in all respects.

*Affirmed.*