Present:  All the Justices

SOUTHERN FLOORS AND ACOUSTICS, INC.

v.  Record No. 031097      OPINION BY JUSTICE DONALD W. LEMONS
                                        April 23, 2004
ANTHONY MAX-YEBOAH

FOOD LION, INC.

v.  Record No. 031140

ANTHONY MAX-YEBOAH, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Edward L. Hogshire, Judge

In this appeal, we consider whether a customer who is injured by tripping over a stack of floor tiles in a grocery store where the floor is being re-tiled is contributorily negligent as a matter of law and, if not, whether both the independent contractor installing the new floor and the store owner can be held liable to the customer for his injuries.

I.  Facts and Proceedings Below

Anthony Max-Yeboah ("Max-Yeboah") tripped over a stack of tiles in an aisle of a Food Lion, Inc. ("Food Lion") grocery store in Charlottesville, Virginia and broke his ankle.  On the evening of Max-Yeboah's accident, employees of Southern Floors and Acoustics, Inc. ("Southern Floors"), a subcontractor, were installing new floor tiles in the aisle where Max-Yeboah was injured.  The Southern Floors employees had spread glue on part of the floor of the aisle an hour

before Max-Yeboah entered it and were waiting for the glue to become "tacky" so that new tiles could be installed. One end of the aisle was completely blocked by caution tape. Conflicting testimony was offered concerning whether, and to what degree, the other end of the aisle was blocked by a fan used to dry the glue, and caution tape.

Between 15 and 20 Southern Floors employees were working in the aisle on a number of tasks associated with the tiling process at the time of the accident. Although Max-Yeboah testified at trial that he was not aware that work was being performed on the floors when he entered the aisle, he was aware that work associated with the remodeling of the store was occurring throughout the store.

Max-Yeboah entered the aisle where the tile work was occurring to get some frozen food. He testified at trial that he did not see the stack of tiles he eventually tripped over, although he had walked past them on his way into the aisle, because he was looking at a freezer case for frozen food. While Max-Yeboah was standing in front of the freezer case, a Southern Floors employee told Max-Yeboah to "go back" because he was standing in the glue which was not yet dry. Max-Yeboah alleges that the man yelled at him and pointed which led Max-Yeboah to believe that something was falling toward him. At trial, the employee recalled addressing Max-Yeboah but did not

recall yelling.  In response to the instruction from the Southern Floors employee, Max-Yeboah turned quickly to exit the aisle, tripped over a foot-high stack of tiles placed next to the freezer unit, and broke his ankle.

Max-Yeboah filed suit against both Southern Floors and Food Lion.  At trial, the jury was given conflicting instructions.  One instruction provided that "[a] person who hires an independent contractor is not liable for his actions."  The jury was also instructed that, "where the owner of the premises had control and oversight at the site where work was being done by the contractor, he is responsible for the negligent actions of an independent contractor."

The trial court overruled Food Lion's objection to the latter instruction.  The jury returned a verdict for Max-Yeboah, finding Food Lion and Southern Floors jointly and severally liable and awarding Max-Yeboah damages in the amount of $30,000.  Food Lion and Southern Floors appeal the judgments adverse to them.

## II.  Analysis

### A.  Contributory Negligence

Southern Floors and Food Lion maintain on appeal that the trial court should have held that Max-Yeboah was contributorily negligent as a matter of law because the tiles that he tripped over were an open and obvious condition, which

he noticed or should have noticed when he initially entered the aisle.  They maintain that Max-Yeboah tripped over the tiles because he failed to be reasonably aware of his surroundings.  Max-Yeboah contends that he was distracted by the yelling and pointing by the Southern Floors employee and that these special circumstances excused his failure to see the tiles.

When a plaintiff is injured by an open and obvious defect, it is his burden "to show conditions outside of himself which prevented him seeing the defect or which would excuse his failure to observe it . . . .  When they do not exist the law charges the party with failure to do what was required of him."  City of South Norfolk v. Dail, 187 Va. 495, 505, 47 S.E.2d 405, 409 (1948); see also Hill v. City of Richmond, 189 Va. 576, 584, 53 S.E.2d 810, 813 (1949).  However, "more is needed than a simple allegation of a distraction to create a jury issue.  It [is] necessary for [the] plaintiff to establish that his excuse for inattention was reasonable, i.e., that the distraction was unexpected and substantial."  West v. City of Portsmouth, 217 Va. 734, 737, 232 S.E.2d 763, 765 (1977).

While the one-foot high stack of tiles Max-Yeboah tripped over was clearly an open and obvious hazard, Max-Yeboah offered evidence of an extrinsic condition, in the form of the

4

Southern Floors employee's yelling and pointing to excuse his inattention. If believed, the condition was unexpected, placed him in fear of bodily harm, and constituted a substantial distraction. Determining the credibility and the weight of the evidence is the province of the finder of fact, in this case, the jury. Therefore, the question of Max-Yeboah's contributory negligence was properly submitted to the jury. The trial court did not err in refusing to hold that Max-Yeboah was contributorily negligent as a matter of law.

### B.  Liability of Food Lion

Food Lion maintains that, even if Max-Yeboah is not contributorily negligent, Food Lion cannot be held liable because its employees were not involved in the work, it had no duty to supervise an independent contractor, and it had no actual or constructive notice of the defect. Further, Food Lion argues that the trial court erred in giving conflicting and irreconcilable instructions to the jury on this issue. We agree.

Southern Floors was clearly an independent contractor. As we have previously stated, "An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." Craig v. Doyle, 179 Va. 526, 531, 19 S.E.2d 675, 677 (1942).

5

> If under the contract the party for whom the work is being done may prescribe not only what the result shall be, but also direct the means and methods by which the other shall do the work, the former is an employer, and the latter an employee. But if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employee, but an independent contractor.

Craig, 179 Va. at 531, 19 S.E.2d at 677; MacCoy v. Colony House Builders, 239 Va. 64, 67-68, 387 S.E.2d 760, 762 (1990).

In cases involving liability of owners of property for injuries to third parties arising from conditions on the premises caused by independent contractors, the possible theories of recovery include vicarious liability of the owner for the acts of the independent contractor,[1] and independent liability for the separate negligence of the owner.

---

[1] The general rule regarding liability of an owner of property for the negligence of an independent contractor has been clearly stated: "As a general rule, an owner who employs an independent contractor is not liable for injuries to third persons caused by the contractor's negligence." Kesler v. Allen, 233 Va. 130, 134, 353 S.E.2d 777, 780 (1987); C & P Telephone Company v. Properties One, 247 Va. 136, 140-41, 439 S.E.2d 369, 372 (1994). In Kesler, we noted:
> Exceptions exist, and the doctrine of respondeat superior may become applicable, if the independent contractor's torts arise directly out of his use of a dangerous instrumentality, arise out of work that is inherently dangerous, are wrongful per se, are a nuisance, or are such that it would in the natural course of events produce injury unless special precautions were taken. Broaddus v. Standard Drug Co., 211 Va. 645, 649, 179 S.E.2d 497, 501 (1971); N. & W. Railway v. Johnson,

Initially, we note that Food Lion moved to dismiss Max-Yeboah's claim of vicarious liability of Food Lion for the negligent acts of Southern Floors.  The trial court granted the motion and, in a pretrial order, dismissed all claims of vicarious liability from the case.  In its order, the trial court held that "[t]his dismissal shall have no effect on plaintiff's general negligence claims against Food Lion."  With the claim of vicarious liability removed from the case, the only claim remaining against Food Lion was for its alleged independent liability for separate negligence in "failing to see that proper warnings and safety conditions existed at the scene of the work."

Curiously, and over the objection of Food Lion, the trial court instructed the jury that Food Lion could be held "responsible for the negligent actions of an independent contractor."  It was error to instruct the jury on a claim that had been removed from the case.

On appeal, most of Max-Yeboah's argument concerning liability of Food Lion is stated in terms of vicarious

---

207 Va. 980, 983-84, 154 S.E.2d 134, 137 (1967); Smith Adm'r. v. Grenadier, 203 Va. 740, 747, 127 S.E.2d 107, 112 (1962); Ritter Corp. v. Rose, 200 Va. 736, 742, 107 S.E.2d 479, 483 (1959). Kesler, 233 Va. at 134, 353 S.E.2d at 780. None of the enumerated exceptions exist in this case.

7

liability, a claim removed from the case prior to trial.[2] However, Max-Yeboah does argue that our decisions in Love v. Schmidt, 239 Va. 357, 389 S.E.2d 707 (1990), and Kesler v. Allen, 233 Va. 134, 353 S.E.2d 777 (1987) together support the liability of Food Lion under the facts of this case and the issues remaining at trial.

Our holding in Kesler was explicit: "We hold that a landlord, in the absence of one of the exceptions to the general rule, has no vicarious liability to a tenant for the negligence of an independent contractor in making repairs or improvements." Id. at 134, 353 S.E.2d at 780. Kesler dealt with vicarious liability, not independent liability of the owner of property. It has no application to this case.

In Love, the plaintiff was injured when she fell off a loose toilet seat. We affirmed the judgment against the landlord-owner, holding that "if a duty to maintain a premises in a safe condition is imposed by contract or by law, it cannot be delegated to an independent contractor." Love, 239 Va. at 357, 360-61, 389 S.E.2d at 709. Unlike circumstances involving discrete and isolated repair and improvement, the work at issue in Love involved regular and routine

---

[2] For example, Max-Yeboah states on brief, "The issue of Food Lion's responsibility for the negligence of Southern Floors . . . was an issue for the jury," and "[t]he jury was

8

maintenance, repair, and janitorial services.  We

characterized the owner's arguments against imposition of

liability as "an attempt to delegate the landlord's common-law

duty to maintain his premises in a reasonably safe condition."

Id. at 361, 389 S.E.2d at 710.

With regard to Food Lion's independent liability to Max-

Yeboah, the jury was properly instructed that:

> An occupant of the premises has the duty to an invitee:
> 1.   To use ordinary care to have the premises
>      in a reasonably safe condition for an
>      invitee's use consistent with the
>      invitation; but an occupant does not
>      guarantee an invitee's safety; and
> 2.   To use ordinary care to warn an invitee of any
>      unsafe condition which the occupant knows, or by the
>      use of ordinary care should know, about; except that
>      an occupant has no duty to warn an invitee of an
>      unsafe condition which is open and obvious to a
>      person using ordinary care for his own safety.
>      If an occupant fails to perform either or both of
>      these duties, then he is negligent.

Food Lion argues correctly that Max-Yeboah presented no

evidence that Food Lion had either actual or constructive

notice of the alleged hazard, the stack of tiles.  It is hard

to imagine that Food Lion could have known about the tiles

because the work was ongoing and the conditions in the aisle

were constantly changing.

---

correct in finding Food Lion, Inc. responsible for the
negligence of its contractor."

Additionally, Max-Yeboah argues that Food Lion negligently failed to supervise Southern Floors in its work. Southern Floors was a subcontractor of a general contractor with whom Food Lion had contracted for store renovations. Southern Floors was neither selected nor actually supervised by Food Lion. As previously noted, Southern Floors was an independent contractor. It is illogical and antithetical to the definition of an independent contractor to impose a duty to supervise upon the principal when the essence of the relationship is lack of power and control to supervise. Food Lion had no duty to supervise the means and method of the work of Southern Floors and cannot be found independently negligent for failing to do so. MacCoy, 239 Va. at 69, 387 S.E.2d at 762; Craig, 179 Va. at 531, 19 S.E.2d at 677.

### III. Conclusion

We hold that the question of Max-Yeboah's contributory negligence was properly submitted to the jury and the trial court did not err in refusing to hold that he was contributorily negligent as a matter of law. However, the trial court did err in its instruction to the jury that Food Lion could be held liable for the negligence of Southern Floors. Further, we hold that Food Lion is not independently negligent because it did not have a duty to supervise Southern Floors in its means and method of work, nor did Food Lion have

10

actual or constructive knowledge of the stack of tiles in the aisle.  Accordingly, the judgment against Southern Floors will be affirmed and the judgment against Food Lion will be reversed.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>final judgment.</u>

11