# CIRCUIT COURT OF THE CITY OF NORFOLK

Chong Kil Yom

    v.

Toyota Motor Credit Corp.,
Renovo Services, L.L.C.,
and Tebor Melick

March 8, 2016

Case No. (Civil) CL14-584

BY JUDGE DAVID W. LANNETTI

Today the Court rules on the Plea in Bar filed by Defendants Toyota Motor Credit Corp. ("Toyota") and Renovo Services, L.L.C. ("Renovo"), a Motion for Summary Judgment filed by Toyota, and a Motion for Leave To Amend Complaint filed by Plaintiff Chong Kil Yom. The Court finds that Defendant Tebor Melick is an independent contractor and not an employee or agent of Toyota or Renovo and, therefore, sustains Toyota and Renovo's Plea in Bar. Because Toyota's potential liability is predicated on an employer-employee or principal-agent relationship, the Court grants Toyota's Motion for Summary Judgment. Although leave to amend a complaint normally is liberally granted, under the circumstances present here, including Yom's significant delay in filing his motion and the concomitant substantial prejudice to the defendants, the Court denies Yom's Motion for Leave To Amend Complaint. The reasons for the Court's rulings are articulated herein.

### Background

Yom filed suit against Toyota, Renovo, and Melick, alleging claims of negligence arising out of a July 22, 2010, encounter, during which Yom was injured while a vehicle (the "Vehicle") he attempted to access was being

repossessed. (Compl. ¶¶ 1, 6.) Yom allegedly reached into the Vehicle to retrieve a piece of paper as Melick moved the Vehicle, causing the Vehicle driver's side door to strike Yom on the head and throw him to the ground, resulting in further injuries. (*Id.*) At the time of the repossession, Yom's daughter, the apparent Vehicle owner, allegedly had defaulted on her loan with Toyota, which prompted Toyota to initiate the repossession process. (Tr. 9.)

Renovo apparently oversees asset recovery and repossession services for its business partners. (Tr. 93-95; Def. Ex. A, ¶ 1.) Renovo was subsequently purchased by Primeritus Financial Services. (Tr. 39.) Renovo operates nationwide and has both independent contractors and employees perform repossessions on its behalf. (Tr. 35, 39-40, 71.) Toyota contracted with Renovo in 2007 to repossess vehicles after debtors defaulted on Toyota loans. (*See* Def. Ex. B.) Toyota actually contracted with Remarketing Solutions, a predecessor of Renovo. The parties stipulated that the contract is binding on Renovo. (Tr. 14-15, 68.) Melick previously was an employee manager of Renovo, but after his position was eliminated, several years prior to the incident at issue, he entered into an "Independent Recovery Contractor Agreement" (the "Agreement") with Renovo. (See Def. Ex. A.) The Agreement was effective at the time of the Vehicle repossession. (Tr. 42-43.)

The Agreement includes the following relevant provisions:

"[Melick] is an independent contractor acting on its own behalf. Nothing in this agreement shall be construed as establishing an employment, agency, partnership or joint venture relationship between the parties." (Def. Ex. A, ¶ 15.)

"As an independent contractor, [Melick] will receive a 1099 for each year worked under this Agreement, as required by federal tax laws." (*Id.*)

"[Melick] agrees to perform recovery/repossession assignments for [Renovo] as requested by [Renovo] from time to time on a contract basis (the 'Services')." (*Id.*, ¶ 2.)

"[Melick] shall be responsible for assuring that all of its employees performing the Services are trained to the full extent necessary to ensure that all Services performed for [Renovo] shall be in full compliance with this Agreement." (*Id.* ¶ 3.)

"While [Melick], or any employee of [Melick], is on duty performing any Assignment on behalf of [Renovo], such person shall at all times have on [his] person a Cellular Phone, which can be used by [Renovo] to contact [Melick] or its employees, including for purposes of modifying, amending, or canceling an Assignment." (*Id.*)

"[Melick] is not exclusively engaged by [Renovo] hereunder and [Renovo] may itself perform or may engage other persons and entities to perform asset recovery and repossession services similar to the Services

in or outside of [Melick's] Coverage Area . . . and [Melick] may perform services similar to the Services for other persons and entities. . . ." (*Id.*)

"[Melick] will at all times maintain all necessary insurance coverage, licenses, approvals, and bonds as are required to lawfully carry out any Assignment. . . ." (*Id.*, ¶ 5.)

"[Melick] will attend, or will cause its applicable employees to attend, any and all training sessions or other meetings or conferences required by [Renovo] from time to time. . . ." (*Id.*)

"[Renovo] will pay [Melick] for all completed Assignments (which are not cancelled before [Melick] performs the same) in accordance with a fee schedule established by [Renovo]. . . ." (*Id.*, ¶ 6.)

"Either party may terminate [Melick's] engagement hereunder at any time, without cause, by giving the other party ten (10) days' written notice of its intent to terminate this agreement. . . . [Renovo] reserves the right to immediately terminate [Melick's] engagement for cause." (*Id.*, ¶ 8.)

"[Melick] shall indemnify, defend, and hold [Renovo] harmless from any and all losses, damages, claims, and/or causes of action . . . which arise out of or result from any act or omission of [Melick] or any of its . . . employees, or out of [Melick's] breach of any representation, warranty, covenant, or obligation hereunder." (*Id.*, ¶ 13.)

The Agreement also includes an exhibit, entitled "Procedures and Guidelines for Engagement, Reporting, and Cancellation of Assignments," which provides, *inter alia*, a section that outlines "Guidelines for Debtor Contact." (*Id.*, Ex. A.)

*Positions of the Parties*

A. *Toyota and Renovo's Plea in Bar*

Both Toyota and Renovo claim they are not employers or principals of Melick. (Def.'s Bench Br. on Plea in Bar 1.) They also claim that Toyota has no relationship with Melick and that Melick is an independent contractor of Renovo. (*Id.*) Toyota and Renovo rely on the following factors to support their contention that Melick was an independent contractor of Renovo at the time of the incident: (1) Melick and Renovo entered into the Agreement, which expressly states that Melick is an independent contractor; (2) Melick no longer was a management employee of Renovo; (3) Melick did not receive a W-2, any benefits, vacation time, or health insurance from Renovo but instead received a 1099 tax form; (4) Melick provided his own equipment, training, skill, and licenses; (5) Melick was required to carry his own insurance; (6) Melick was not instructed by Renovo on how to physically perform a repossession; (7) Melick was required to indemnify Renovo for any damages caused while he repossessed vehicles; (8) Melick was paid per repossession completed, not by hours worked, and there was

no guarantee of any work or compensation; (9) Melick was subject to immediate termination for cause or, otherwise, with ten days' notice; (10) Melick could hire employees; and (11) Melick was not required to provide services exclusively to Renovo. (*Id.*, at 1-2.)

Yom responds that there are indicia that Melick is an employee of Renovo, as discussed in more detail in his response to Toyota's Motion for Summary Judgment. These include the following: (1) Renovo imposed certain duties on Melick related to the repossession itself; (2) Renovo required Melick to cease the repossession if the debtor objects; and (3) Renovo required Melick to carry a cell phone with him at all times in case there was a change in or cancellation of the repossession. (Tr. 29.)

## B. *Toyota's Motion for Summary Judgment*

In November 2015, Defendants Renovo and Toyota filed a motion for summary judgment, claiming that, as a matter of law they are not liable to Yom. Toyota and Renovo claim that Toyota had no contract whatsoever with Melick and that Melick is an independent contractor of Renovo; they, therefore, assert that they are not liable for any negligence of Melick. (D.'s Mot. for Summ. J. 1-2.) On December 18, 2015, the Court denied Renovo's Motion for Summary Judgment and took Toyota's Motion for Summary Judgment under advisement. (Dec. 18, 2015, Order.)

Yom contends that Melick is Renovo's employee or agent. (Pl.'s Mot. in Opp'n to Summ. J. 1.) Yom relies on certain provisions of the Agreement to support his contention. (*Id.*, at 5.) He argues that the Agreement contains certain guidelines regarding how Melick is to conduct repossessions. Specifically, Yom asserts that Renovo exercised significant "control factors" over Melick, requiring him to: possess a cell phone at all times; obtain certain information from Renovo regarding the debtor and the vehicle to be repossessed; complete a condition report; inventory the repossessed vehicle; and notify Toyota after the repossession was complete. (*Id.*) Additionally, the Agreement contains guidelines regarding how Melick is required to act when around debtors. (*Id.*) Melick also testified regarding certain other requirements not in the Agreement that Renovo allegedly placed on him while performing repossessions, including a preclusion from using "sling trucks," a prohibition against driving repossessed vehicles, and a requirement that he not use or carry a firearm. (*Id.*, at 6-7.)

## C. *Yom's Motion To Amend his Complaint*

In January 2016, Yom moved to amend his Complaint against Toyota. At that time, Yom conceded that Melick was not an employee or agent of Toyota. (Pl.'s Mot. for Leave To Amend Compl. 1.) In his motion, Yom, for the first time, seeks to impose a non-delegable duty upon Toyota, as the Vehicle lienholder, to ensure an injury-free repossession. (*Id.*, at 3-5.)

Yom relies on cases from more than ten non-Virginia jurisdictions, which interpret Uniform Commercial Code (the "UCC") language adopted by Virginia, and argues that this Court should similarly find that "the U.C.C. statute authorizing self-help repossession imposes a nondelegable duty to avoid breaching the peace." (*Id.* at 5 (quoting *Rand v. Porshe Fin. Servs.*, 167 P.3d 111, 120 (Ariz. App. 2007)).) Although Yom apparently concedes that a breach of the peace is required and that such a breach generally "requires either a confrontation, trespass, objection by the debtor, or threat of force or violence," he contends that "it would be inequitable, unjust, and confusing to find that a negligent repossession that caused serious and permanent bodily injury was not a breach of peace." (*Id.*, at 6.) Stated differently, Yom contends that Melick's alleged negligence alone constitutes a breach of the peace. (*Id.*, at 5-6.)

Toyota and Renovo respond as follows: (1) Yom has known the facts underlying this new claim for more than five and a half years and has not asserted the claim previously; (2) the new claim does not relate back and is barred by the statute of limitations; (3) Yom failed to provide the proposed amended complaint as required; (4) no Virginia law supports the new claim; (5) there was no breach of peace, making the claim futile; and (6) the duty owed under the UCC is by a creditor to a debtor, and Yom is not the debtor. (Defs.' Opp. to Pl.'s Mot. To Amend Compl. 2-8.)

*Analysis*

A. *Legal Standard*

"A plea in bar presents a distinct issue which, if proven, creates a bar to the plaintiff's right of recovery." *Hilton v. Martin*, 275 Va. 176, 179, 654 S.E.2d 572, 574 (2008). The purpose of a plea in bar is "to narrow the litigation by resolving an issue that will determine whether a plaintiff may proceed to trial on a particular cause of action." *Hawthorne v. VanMarter*, 279 Va. 566, 578, 692 S.E.2d 226, 234 (2010).

The moving party has the burden of proving the dispositive fact raised in a plea in bar. *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996). As with a demurrer, the facts contained within the complaint are considered true for purposes of a plea in bar. *Id.*

In determining whether an entity is an independent contractor or employee of another, a court must examine the following factors: (1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power of control. *See Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 377 S.E.2d 589, 594-95 (1989). The fourth factor, power of control, is determinative. *Id.* The employer need not actually exercise this control, however; "the test is whether the employer has *the power* to exercise such

control." *McDonald v. Hampton Training Sch. for Nurses*, 254 Va. 79, 81, 486 S.E.2d 299, 301 (1997) (emphasis added).

Regarding motions for summary judgment, Rule 3:20 of the Rules of Supreme Court of Virginia states as follows:

> Any party may make a motion for summary judgment at any time after the parties are at issue. . . . If it appears from the pleadings, the orders, if any, made at a pretrial conference, the admissions, if any, in the proceedings, or, upon sustaining a motion to strike the evidence, that the moving party is entitled to judgment, the court shall enter judgment in that party's favor. . . . Summary judgment shall not be entered if any material fact is genuinely in dispute.

Va. Sup. Ct. R. 3:20. A trial court considering a motion for summary judgment must "accept[ ] as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88, 677 S.E.2d 272, 274 (2009). Although summary judgment is available in certain circumstances, it is well settled that it "is a drastic remedy, available only when there are no material facts genuinely in dispute." *Id.* "[I]f the evidence is conflicting on a material point or if reasonable persons may draw different conclusions from the evidence, summary judgment is not appropriate." *Id.*

Pursuant to Virginia Supreme Court Rule 1:8, "[n]o amendments shall be made to any pleading after it is filed save by leave of court. Leave to amend shall be liberally granted in furtherance of the ends of justice." Va. Sup. Ct. R. 1:8. Under the plain language of Rule 1:8, leave to amend a pleading is in the sound discretion of the court and should be exercised liberally to further the interests of justice. *Lake v. Northern Va. Women's Med. Ctr., Inc.*, 253 Va. 255, 262, 483 S.E.2d 220, 223 (1997). An amendment will not be permitted where it will unfairly prejudice the other party, however, or where discovery and trial preparation are virtually complete. *Hetland v. Worcester Mut. Ins. Co.*, 231 Va. 44, 46, 240 S.E.2d 574, 575 (1986).

A court can exercise discretion to allow a new claim to relate back to the date of the original complaint if the court finds "(i) the amending party was reasonably diligent in asserting the amended claim . . . and (ii) parties opposing the amendment will not be substantially prejudiced in litigating on the merits as a result of the timing of the amendment." Va. Code 8.01-6.1 (Repl. Vol. 2015).

## B. *Defendants' Plea in Bar*

The Court has considered the Plea in Bar, related briefs, evidence presented, and oral argument at the January 11, 2016, hearing, and applicable authorities. The Court now rules on the Plea in Bar.

"An independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." *Southern Floors & Acoustics, Inc. v. Max-Yeboah,* 267 Va. 682, 687, 594 S.E.2d 908, 911 (2004) (quoting *Craig v. Doyle,* 179 Va. 526, 531, 19 S.E.2d 675, 677 (1942)). If the person for whom the work is being done may dictate not only the result of the work, but also the method by which the other does the work, then the relationship is one of principal and agent, which can include employer and employee. *See id.* If the person may dictate only the result and the other may use whatever method he chooses to accomplish that result, however, then the relationship is not one of principal and agent, but rather is a relationship of business owner and independent contractor. *Id.*

The independent contractor doctrine is well established in Virginia. In *Atkinson v. Sachno,* the court noted that, despite specific directions under which a physician operated to perform evaluations for Disability Determination Services (DDS), "the various regulations, protocols, and procedures under which [the physician] produces that report, or product, do not constitute control by [DDS] of the means and methods by which he performs the examinations and tests." 261 Va. 278, 285, 541 S.E.2d 902, 906 (2001). The court found the following facts dispositive in finding the physician to be an independent contractor: he conducted his full-time internal medicine practice in his private office, using equipment he owned; he employed his own support staff; he was not under an obligation to accept any referrals from DDS; he was paid a fixed fee for the examination of each claimant referred to him by DDS; and no withholdings were deducted from his compensation for conducting these examinations. *Id.* at 285, 541 S.E.2d at 905.

In *MacCoy v. Colony House B...ilders, Inc.,* the court found that an electrician was an independent contractor when, *inter alia,* he: did not receive a W-2 or have taxes withheld from his pay; was not provided health insurance, workers' compensation insurance, or any other benefits; was told where electrical panel boxes, fixtures, switches, and receptacles were to be installed; was told when to work on what houses; and was provided materials for each task. 239 Va. 64, 68, 387 S.E.2d 760, 762 (1990). The court found that the business owner "merely prescribed what the results should be" and that the electrician "was free to adopt and employ the means and methods necessary to accomplish the prescribed results." *Id.*

In *Richmond Newspapers, Inc. v. Gill,* the court found that a newspaper deliveryman was an independent contractor when, *inter alia,* the deliveryman: was identified as an independent contractor in the relevant

contract; provided and maintained the equipment he used for delivery; incurred various expenses in the conduct of his business and could control his loss and profit; was free to engage in other work; could hire people to work for him; and was subject to termination only under specific conditions. 224 Va. 92, 98-101, 294 S.E.2d 840, 843-45 (1982).

According to the Virginia Supreme Court:

> The right to discharge is an element of the power to control performance. An absolute right to discharge without cause or notice includes the power to compel obedience to instructions as given and, accordingly, is one of the earmarks of the employer-employee relationship. While an employer-employee relationship may be created by contract notwithstanding express limitations upon the employer's right to terminate the relationship, such limitations are more characteristic of contracts negotiated by independent contractors. *Richmond Newspapers, Inc. v. Gill*, 224 Va. 92, 100, 294 S.E.2d 840, 844 (1982). Although the newspaper company maintained some control over the process of delivering newspapers, the court found that this control related to "the power to control the result sought to be accomplished" and that the company "reserved and exercised virtually no control over the means and methods [the deliveryman] employed in the conduct of his business."

*Id.*, at 100-01, 294 S.E.2d at 845.

In the case at bar, the relationship between Melick and Renovo is much more like that of a business owner and independent contractor than an employer and employee. The Agreement is titled "Independent Recovery Contractor Agreement," and Melick is expressly identified therein as an independent contractor. (Def. Ex. A, ¶ 15.) Although not dispositive, identification of an entity as an independent contractor is indicative of the type of relationship that exists. *Atkinson*, 261 Va. at 283-84, 541 S.E.2d at 904-05. Although Melick once was a management employee of Renovo, he no longer held that job at the time of the incident. (Tr. 136-37.) In contrast to when he was a management employee, as a repossessor, Melick was not provided any benefits by Renovo, including health insurance and vacation time, and he received a 1099 tax form and not a W-2 form. (Tr. 39-40, 135-37; *see also* Ex. D at 3-5 (copies of Melick's 1099 income forms from 2008 to 2010).) Melick was subject to immediate termination for cause or, otherwise, with ten days' notice. (Def. Ex. A, ¶ 8.) Melick was paid per repossession actually completed and not on a regular basis, had no guarantee of work or compensation, was not required to provide services exclusively to Renovo, and could hire his own employees. (Tr. 36, 40, 43;

Def. Ex. A, ¶¶ 3, 6.) Melick also was required to indemnify Renovo for any damage he caused while repossessing vehicles. (Tr. 22; Def. Ex. A, ¶ 13.)

There also is substantial evidence that Melick, and not Renovo, controlled the means and methods of conducting vehicle repossessions, including the repossession at issue here. *See Richmond Newspapers,* 224 Va. at 98, 294 S.E.2d at 843 ("The power of control is the most significant indicium of the employment relationship; other factors merely help to elucidate the manner and degree of control."). The actual procedure by which the Vehicle was repossessed was within Melick's discretion (Tr. 49-55), Renovo did not furnish Melick with materials or tools to conduct the repossession (Tr. 40), Melick provided his own truck to carry out the repossession (Tr. 52), and Melick was instructed to carry his own vehicle insurance (Tr. 41-42; *see also* Def. Ex. E).

There is some disagreement regarding whether Melick actually obtained vehicle insurance for business purposes. Melick testified that he had personal vehicle insurance but not commercial general liability coverage at the time of the incident. (Tr. 126.) By contrast, Renovo's General Manager and Vice President of Operations testified that he understood that Melick had obtained commercial insurance. (Tr. 41.) Regardless, the Agreement requires Melick to carry commercial insurance. (*See* Ex. A, ¶ 12.)

Although the Agreement provides certain guidelines, including not breaching the peace, securing repossessed vehicles in a safe and secure environment designated by Renovo, preparing a condition report, inventorying the repossessed vehicles, and securing personal property found in the repossessed vehicles, the guideline related to the repossession procedure itself simply states, "[Melick] should proceed with the repossession/recovery unless debtor objects." (Def. Ex. A, Ex. A.)

Based on the totality of the circumstances, the Court finds the conditions Yom identifies as "control factors" are merely incidental details required to facilitate and accomplish the ultimate result of repossessing vehicles for Renovo. The factors appear to be typical of any contract between a repossession company and an independent tow truck driver. The Court finds that Renovo's control over Melick was limited to the result sought to be accomplished, *i.e.,* the repossessions, and that Renovo retained and exercised virtually no control over Melick's means and methods to conduct the repossessions. As the court stated in Atkinson, "[t]he numerous regulations, protocols, and procedures under which [the entity] must perform the various examinations and tests sought by [the other entity] merely ensure that the specific and objective . . . evidence needed by [the other entity] is obtained." 261 Va. at 285, 541 S.E.2d at 905-06. Similarly, here the protocols required of Melick in his contract with Renovo only facilitate the accomplishment of the repossessions.

Based on the foregoing, the Court finds that Melick is an independent contractor of Renovo. The Court, therefore, sustains Toyota's and Renovo's Plea in Bar.

## C. *Toyota's Motion for Summary Judgment*

As noted *supra,* Yom concedes that Melick is not an employee or agent of Toyota and that his only claimed avenue of relief vis-à-vis Toyota is his newfound allegation that Toyota, as the Vehicle lienholder, is liable for personal injuries sustained during repossession of the Vehicle. Because the Court denies Yom's Motion for Leave To Amend, as discussed *infra,* Yom has no viable claim against Toyota. The Court, therefore, grants Toyota's Motion for Summary Judgment.

## D. *Yom's Motion for Leave To Amend His Complaint*

The Court finds the following facts relevant in considering Yom's Motion for Leave To Amend his Complaint: the original Complaint was filed more than five-and-a-half years ago;[1] Yom's theory of recovery as stated in his Motion for Leave To Amend his Complaint was not alleged in either the original Complaint or the current Complaint, which raises a statute of limitations issue; Yom has presented no adequate explanation for his significant delay in asserting this new theory; and the designated period for discovery in this case is closed. Yom first asserted this new theory at the hearing on January 11, 2016, which was the scheduled trial date. The parties agreed to instead use the trial date to argue Toyota and Renovo's Plea in Bar. The Court also notes that Yom has failed to comply with the Virginia Supreme Court rule requiring that "any written motion for leave to file an amended pleading shall be accompanied by a properly executed proposed amended pleading, in a form suitable for filing." Va. Sup. Ct. R. 1:8. Based on the foregoing, the Court finds that the defendants would be substantially prejudiced if Yom were allowed to raise this new theory at this late juncture.

Even if Yom were able to overcome the shortcomings recited above, *arguendo,* the Court finds that Yom's potential new claim is not viable. *See Brown v. Jacobs,* 289 Va. 209, 217, 768 S.E.2d 421, 426 (2015) (holding that a circuit court did not abuse its discretion in denying plaintiff leave to amend her amended complaint after considering the additional allegations in the proposed second amended complaint).

A principal generally is not liable for physical harm caused by an independent contractor's acts or omissions to another. *See, e.g., Chesapeake & Potomac Tel. Co. v. Properties One, Inc.,* 247 Va. 136, 140-41, 439 S.E.2d 369, 372 (1994). Toyota had the right to repossess the Vehicle without judicial

---

[1] The original Complaint was nonsuited, and the Complaint associated with the instant case was filed on January 27, 2014.

process because it was a secured creditor under the section of the Code of Virginia that codifies the UCC. *See* Va. Code § 8.9A-102(a)(73) (Repl. Vol. 2015). Without judicial process, however, a repossession in Virginia is authorized only if it does not "breach the peace." *Id.* § 8.9A-609(b)(2). Relatedly, the Court finds unpersuasive Yom assertion that Melick's alleged negligence somehow constitutes a breach of the peace.

The Court is not aware of any Virginia cases interpreting the applicable Code section to impose liability on a lienholder in Virginia. Yom notes that other jurisdictions have interpreted the same language to give rise to a non-delegable duty of the lienholder based on public policy grounds. (Mot. for Leave To Amend 3, 5.) In reliance thereon, Yom argues that, although Toyota could contract with Renovo to physically repossess the truck, it could not delegate to Renovo or Renovo's agents Toyota's liability for injuries resulting from a repossession. (*Id.*, at 3.) Of significant note, the cases upon which Yom relies involve injuries to the vehicle owner, *i.e.,* the debtor, during repossession. *See General Fin. Corp. v. Smith,* 505 So. 2d 1045, 1046 (Ala. 1987). In the instant case, Yom is not the debtor; rather, his daughter, who was not injured, is the Vehicle owner and debtor. (Tr. 9.)

The Court declines to accept Plaintiff's invitation to impose a non-delegable duty of safe repossession on Toyota as the Vehicle's lienholder. In its argument for the creation of such a duty, Yom relies on several out-of-jurisdiction cases. Like the instant case, most of the cited cases involved statutes that require non-judicial repossession to occur without breaching the peace. Although non-Virginia cases can be considered as persuasive authority, such consideration must be tempered by the history on which those cases are based. In Alabama, for instance, this non-delegable duty is well-recognized and quite broad. In *General Finance Corp. v. Smith,* 505 So. 2d 1045 (Ala. 1987), relied upon by Yom, the court cited three cases supporting its assertion of a duty owed by an entity for its independent contractor's negligence. In one case, *State Farm Mutual Auto. Ins. Co. v. Dodd,* the court went even further and discussed the history of the non-delegable duty, citing a line of cases that runs back to the 1880s. 162 So. 2d 621, 626-27 (Ala. 1964) (citing *Montgomery Gaslight Co. v. Montgomery & E. Ry. Co.,* 5 So. 735 (Ala. 1889); *City of Birmingham v. McCrary,* 4 So. 630, 633 (Ala. 1888) (finding that, when a statute imposes a duty upon a corporation, it cannot be evaded by casting the duty on another through contract or otherwise)). In *Robertson v. City of Tuscaloosa,* the Alabama Supreme Court held that the non-delegable duty also could arise from a statute. 413 So. 2d 1064, 1066 (Ala. 1982).

The significant history of cases preceding the *General Finance Corp.* decision explains why the Alabama Supreme Court was able to deliver a unanimous, *per curiam* opinion in *General Finance Corp.* The precedent supporting the decision was vast; the exception had been developed extensively through case law; and the rule was familiar to that jurisdiction.

In the case at bar, imposition of a non-delegable duty on a lienholder would constitute a break with Virginia's usual approach to the law governing employers and their independent contractors. Without Virginia appellate court precedent, this Court is not willing to create such a new duty.

In light of the foregoing, the Court denies Yom's Motion for Leave To Amend his Complaint.

## Conclusion

Based on the foregoing, the Court finds that Melick is an independent contractor and not an employee or agent of Toyota or Renovo, and the Court, therefore, sustains Toyota and Renovo's Plea in Bar. In light of the absence of a relationship or other basis for liability between Toyota and Melick, the Court grants Toyota's Motion for Summary Judgment. Under the circumstances present here, including Yom's significant delay in filing his motion and the substantial prejudice to the defendants, the Court denies Yom's Motion for Leave To Amend Complaint.